COMMONWEALTH vs. COUNTY OF SUFFOLK & others.[1]

Suffolk.  December 4, 1980. — April 2, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Practice, Civil,* Injunction.  *Injunction.  Court House.*

In an action by the Commonwealth on behalf of the Trial Court to pre-
vent the county of Suffolk, the city of Boston, and certain city officials
from reducing the level of funding for the operation of the Suffolk
County Court House and to establish that the city retained respon-
sibility for maintaining the court house under St. 1978, c. 478, the
Court Reorganization Act, the issuance of a preliminary injunction re-
straining the defendants from reducing the existing level of services at
the court house was appropriate where the Commonwealth estab-
lished a substantial likelihood of success on the merits and a risk of ir-
reparable harm to the Trial Court if the services were not provided.
[288-289]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on June 23, 1980.

A motion for a preliminary injunction was heard by
*Quirico,* J.

*Harold J. Carroll,* Corporation Counsel (*Howard P.
Speicher,* Assistant Corporation Counsel, with him) for the
defendants.

*Paul W. Johnson,* Assistant Attorney General (*Carl
Valvo,* Assistant Attorney General, & *Michael F. Edgerton,*
with him) for the Commonwealth.

BRAUCHER, J.  On June 26, 1980, after a hearing, a single
justice of this court issued an order granting the plaintiff's
motion for a preliminary injunction, restraining the defend-
ants from reducing the existing level of services at the Suf-

---

[1] Suffolk County Court House Commission, the city of Boston, and its
mayor, auditor, treasurer, budget director and personnel director.

folk County Court House (Court House) until further order of the county court.[2] The defendants appealed, and we affirm. We treat the appeal like an appeal pursuant to G. L. c. 231, § 118, second par. Cf. Mass. R. A. P. 6 (a), as amended, 378 Mass. 924 (1979), and 15 (c), 365 Mass. 859 (1974).

The Commonwealth, acting through the office of the Attorney General on behalf of the Trial Court, filed its verified complaint in the Supreme Judicial Court for Suffolk County on June 23, 1980. From the complaint and exhibits submitted to the single justice the following facts appear. The municipal defendants notified the Commission that funding for the operation of the Court House would be reduced for the fiscal year beginning July 1, 1980 (FY 1981). Therefore, in June, 1980, the Commission announced that the employment of some thirty-six temporary employees would be terminated as of June 24, 1980. Later, the termination date was postponed to June 30, 1980. The Commission determined that the budget reduction would prevent it from providing adequate security, elevator service, and custodial maintenance; and the termination of the temporary employees would substantially limit the ability of the judicial branch to perform its judicial functions in the Court House and would endanger the safety and convenience of the public. On June 19, 1980, the Superintendent of State Buildings established a rent of $1.95 per square foot to be paid by the Commonwealth to the city of Boston (city) for

---

[2] The injunction runs against the defendants other than the Suffolk County Court House Commission (Commission), "restraining them and all others acting in concert with them from failing to provide sufficient funds to the Commission to pay for the continued services of as many of the Commission's employees as presently maintain security, operate elevators, and perform other services essential to the administration of justice in the Suffolk County Court House and against the Commission and all others acting in concert with it from terminating any employees who presently maintain security, operate elevators, or perform other services essential to the administration of justice in the Suffolk County Court House without substituting other personnel to maintain the present level of services . . . until further order of this Court."

the use of the Court House in FY 1980. The city had a right to appeal to this court under G. L. c. 29A, § 4.

The issuance or denial of a preliminary injunction requires an evaluation in combination of the moving party's claim of injury and its chance of success on the merits. If there is a substantial risk of irreparable harm to the moving party, it must be balanced against any similar risk to the other party in the light of the chance of each party to succeed on the merits. *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 617 (1980).

The plaintiff's principal claim on the merits is that the city retains the responsibility for maintaining the Court House under the Court Reorganization Act, St. 1978, c. 478 (Act). The defendants deny any such responsibility in the absence of a rental agreement for FY 1981 pursuant to G. L. c. 29A, § 4, inserted by St. 1978, c. 478, § 12.

Before 1978 the city clearly had the statutory responsibility to provide and maintain suitable court houses in Suffolk County. G. L. c. 34, §§ 3, 14, as amended through St. 1965, c. 513. *Thompson* v. *Chelsea*, 358 Mass. 1, 6-7 (1970). *Hibbard* v. *County of Suffolk*, 163 Mass. 34, 37 (1895). Under St. 1935, c. 474, § 6, the Commonwealth contributed 30% of the annual costs of maintenance and operation of the Court House, and the city paid the remaining 70%. The Act deleted the references to "court houses" in G. L. c. 34, §§ 3, 14. St. 1978, c. 478, §§ 17, 18. The parties are apparently in agreement that in making appropriations for FY 1980 and FY 1981 the Legislature has treated St. 1935, c. 474, § 6, as no longer effective.

In the Act the Legislature stated its intention that there be a single State budget for the entire judicial branch for FY 1980, and that the counties make all payments relative to the maintenance and operation of the judicial system until July 1, 1979, or until the Commonwealth provided for full funding, whichever came first. St. 1978, c. 478, §§ 333, 334. See *Keane* v. *City Auditor of Boston*, 380 Mass. 201, 206 (1980). "All costs of maintenance and operation of the judicial branch shall be paid by the commonwealth."

G. L. c. 29A, § 1, inserted by St. 1978, c. 478, § 12, effective July 1, 1978. But the Commonwealth did not assume ownership of the court houses; instead, they are to be rented by the judicial branch from the counties, cities or towns at a rent to be "equitably established." G. L. c. 29A, § 4, inserted by St. 1978, c. 478, § 12, effective July 1, 1978. See *County Comm'rs of Plymouth* v. *State Superintendent of Bldgs. ante* 262 (1981).

In these circumstances we think the plaintiff has established a substantial likelihood of success on the merits. Under G. L. c. 29A, § 4, the city retains ownership of the Court House and is to rent it to the judicial branch. It seems implicit that the city is to continue to provide the same court facilities that were in use before the Act, looking to the "equitably established" rent for reimbursement. Costs of maintenance, repairs, and utilities paid by the city are to be taken into account in establishing the rent. The statute contemplates that negotiations may break down, and provides for establishing the rent after hearing, subject to appeal. Such a procedure may take time, and the Legislature could not have intended that court houses be closed until a final decision is reached. This conclusion is not affected by the so called "tax-cap" legislation, St. 1979, c. 151, § 3, requiring that county budgets for FY 1980 and FY 1981 be decreased by the amounts appropriated for the costs of the county courts in FY 1979, "which costs are to be assumed by the commonwealth." Costs which are not so assumed need not be deducted.

There is no doubt that the Trial Court would suffer harm if the services in question were not provided. The defendant's suggestion that the harm could be avoided by an injunction against the Commonwealth on the authority of *O'Coin's, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. 507 (1972), would remit the Trial Court to an untried remedy of dubious efficacy. The risk of irreparable harm to the defendants, on the other hand, rests in speculation.

*Order affirmed.*