TOWN OF BROOKLINE vs. MELVIN GOLDSTEIN & others.[1]

Norfolk. November 4, 1982. — March 14, 1983.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Evidence,* Judicial notice. *Injunction. Municipal Corporations,* Officers and employees, Municipality's right to relief from vexatious conduct. *Practice, Civil,* Counsel fees, Frivolous litigation. *Constitutional Law,* Freedom of speech and press.

In an action by a town to restrain a private citizen from instituting improper and frivolous legal proceedings against it and its employees and officials, the issuance of a preliminary injunction restraining the defendant from commencing any legal proceedings against the town without first obtaining the court's approval was inappropriate where the town failed to demonstrate that its remedy under G. L. c. 231, § 6F, for its reasonable fees and costs, would be inadequate if the defendant were to persist in bringing frivolous actions against it, and where the interest of judicial economy and free access to the courts would be better served by requiring the town to seek relief first under § 6F. [447-449]

In an action by a town seeking to prevent continued harassment by a private citizen of town officials and employees, the judge did not abuse his discretion by issuing a preliminary injunction restraining the defendant from communicating with town officials at their homes or places of business where the harm from such activity was great and there was no adequate remedy at law, where the town had demonstrated a likelihood of success on the merits, and where the harm to the citizen as a result of the injunction was minimal; however, to the extent the preliminary injunction prohibited the defendant from communicating with the employees and officials of the town except through the mail and one telephone call on any business day to the board of selectmen, it was broader than was required to protect the town's officials and employees from harassment. [449-451]

CIVIL ACTION commenced in the Superior Court Department on October 13, 1981.

[1] Esther Goldstein and Mared Realty Corporation.

A proceeding for preliminary injunctive relief was heard by *Garrity*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Jamie Ann Sabino* for the defendants.

*David Lee Turner* (*Cathleen Cavell* with him) for the plaintiff.

LIACOS, J.  The plaintiff, the town of Brookline, commenced this action against the defendants seeking preliminary and permanent injunctive relief.  The town claimed that Melvin Goldstein had (1) instituted improper and frivolous legal proceedings against the town, its officers, employees, boards, commissions, and elected officials; and (2) harassed a substantial number of town employees and officials by calling them repeatedly during working hours at the town's offices and at their homes during the early morning and late evening, as well as weekends.

After a hearing, a judge of the Superior Court issued a preliminary injunction restraining Goldstein from commencing any legal proceedings against the town without obtaining that court's approval, and from communicating with the town or its officials and employees, except for one telephone call per business day to the office of the board of selectmen and by letters sent through the United States mail addressed to the board's office.[2]  Pursuant to G. L. c. 231, § 118, second par., Goldstein appealed from this interlocutory order, arguing that (1) the judge abused his discretion in granting the injunction, and (2) the injunction is overbroad and vague.  We transferred the appeal here on our own motion.  We vacate the order below and remand the case for entry of a new order in conformity with this opinion.

The facts are as follows.  The defendant is a resident of the town of Brookline, who evidently has become dissatisfied with the course of town government.  As a consequence, he

---

[2] At the hearing, the town withdrew its request for preliminary injunctive relief against Esther Goldstein and Mared Realty Corporation.

has filed, either individually or as president of Mared Realty Corporation, numerous proceedings against the town, its officers, employees, boards, commissions, and elected officials. These proceedings comprised four civil cases brought in the Superior Court in Norfolk County, two civil cases and three criminal complaints brought in the Brookline Division of the District Court department. The status of these cases at the time the complaint was filed was as follows: (1) Three of the cases filed in the Superior Court had been dismissed,[3] and one case was pending; (2) one case in the Brookline District Court had been tried, resulting in a judgment against Goldstein, and one case was pending; and (3) all three criminal complaints had been dismissed. Goldstein filed an affidavit in this case stating that these suits had been brought in good faith without any intent to harass the town or any of its officials.

Goldstein has also pressed his grievances directly. Affidavits filed by the town indicate that Goldstein has called town officials repeatedly at their homes, places of business, and at town offices. Many of these calls were made early in the morning and late in the evening. Sample logs of telephone calls made by Goldstein to homes of the chairman of the board of selectmen, Robert M. Stein, and the chief of police are set out in the margin.[4] Stein's affidavit also

---

[3] Goldstein filed a motion for a rehearing in one of these cases. That motion was denied.

[4] A sample log of telephone calls from Melvin Goldstein appears on the affidavit of Robert M. Stein as follows:

| "September 15 | Home | 6:10 am  6:15 am 6:45 am 7:15 am 7:30 pm  10:00 pm |
| | Office | 2:00 pm |
| "September 16 | Home | 7:15 am,  7:30 pm 10:35 pm |
| | Office | 8:15 am,  8:30 am 9:15 am |
| "October 5 | Home | 7:00 am |
| | Office | 8:55 am  9:15 am 10:30 am 1:00 pm 3:55 pm  4:00 pm" |

A portion of the affidavit of the acting chief of police, William J. Riley, reads as follows:

alleges that Goldstein called and harassed him, his business associates, and superiors at his place of employment. The town also filed an affidavit alleging that Goldstein has interfered with the work of the town's police department through constant and repeated telephone calls and personal visits. The affidavits filed by the town also allege that Goldstein has used abusive language during these calls and visits, and that the matters he wished to discuss were frivolous. Goldstein's affidavit in answer to these allegations is that he resorted to calling town officials at their homes only after they refused to discuss with him certain unspecified municipal matters. The only allegation that he denies specifically is that his visits and calls have interfered with police business. He also alleged that his actions were in good faith, that his legal claims were meritorious, and that he had no intent to harass the town or any of its officials.

"[A] log of telephone calls since July 18, 1981 received from the defendant, Melvin Goldstein, by Chief of Police George R. Simard and members of his family, at his home . . . contains the following information:

"  .   .   .   .

| "Saturday, | July 18, 1981 | over 30 calls | | |
|---|---|---|---|---|
| Monday, | July 20, 1981 | 7:30 A.M. | to 9:18 P.M. | five calls |
| Tuesday, | July 21, 1981 | 7:40 A.M. | to 7:52 A.M. | six calls |
| Saturday, | Aug. 1, 1981 | 8:30 A.M. | to 3:15 P.M. | six calls |
| Wednesday, | Aug. 5, 1981 | 7:45 P.M. | | one call |
| Saturday, | Aug. 8, 1981 | 8:30 A.M. | to 7:00 P.M. | four calls |
| Sunday, | Aug. 9, 1981 | 4:20 P.M. | | one call |
| Friday, | Aug. 14, 1981 | 8:00 P.M. | — 8:05 P.M. | two calls |
| Friday, | Aug. 21, 1981 | 9:05 A.M. | | one call |
| Saturday, | Aug. 22, 1981 | 1:14 P.M. | to 9:48 P.M. | four calls |
| Friday, | Aug. 28, 1981 | 6:45 P.M. | — 6:50 P.M. | two calls |
| Saturday, | Aug. 29, 1981 | 9:15 A.M. | to 9:23 A.M. | three calls |
| Wednesday, | Sept. 2, 1981 | 6:40 P.M. | to 6:55 P.M. | six calls |
| Thursday, | Sept. 3, 1981 | 6:35 P.M. | to 7:40 P.M. | six calls |
| Friday, | Sept. 4, 1981 | 7:45 A.M. | | one call |
| Sunday, | Oct. 4, 1981 | 11:00 A.M. | — 11:30 A.M. | two calls |
| Monday, | Oct. 5, 1981 | 7:A.M. | to 8:07 A.M. | four calls |
| Friday, | Oct. 9, 1981 | 6:30 A.M. | to 7:30 A.M. | six calls |
| Saturday, | Oct. 10, 1981 | 7:00 A.M. | to 7:30 P.M. | twenty calls |
| Monday, | Oct. 13, 1981 | 6:30 A.M. | to 7:15 A.M. | seven calls" |

1. Our task here is simply to pass on the propriety of an injunction pending a full hearing on the merits of the underlying dispute. The record before us consists of the pleadings and affidavits filed by the parties. We may also take judicial notice of the court papers filed in the prior actions brought by Goldstein against the town. *Poland* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 342 Mass. 75, 77 n.2 (1961). *Nantucket Conservation Found., Inc.* v. *Russell Management, Inc.*, 2 Mass. App. Ct. 868, 868-869 (1974). *Flynn* v. *Brassard*, 1 Mass. App. Ct. 678, 681-682 (1974).[5] We have no transcript of what transpired at the hearing below and therefore assume that it focused on the allegations contained in the town's complaint and the affidavits. In these circumstances we may reach our own conclusions, although we give deference to the exercise of discretion by the judge below. *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 614-615 (1980).

To determine whether a preliminary injunction should issue, a judge must evaluate (1) the plaintiff's claim that he will suffer irreparable harm if the injunction is denied; (2) the injury the defendant will suffer if the injunction is granted; and (3) the likelihood of success on the merits. *Commonwealth* v. *County of Suffolk*, 383 Mass. 286, 288 (1981). *Packaging Indus. Group, Inc.* v. *Cheney, supra* at 617. In an appropriate case, the risk of harm to the public interest also may be considered. See *Bettigole* v. *Assessors of Springfield*, 343 Mass. 223, 234, 237 (1961). Where the balance of these risks cuts in favor of the moving party, a preliminary injunction may issue. *Commonwealth* v. *County of Suffolk, supra. Packaging Indus. Group, Inc.* v. *Cheney, supra.*

---

[5] The town claims that certified copies of the pleadings in the other cases were submitted to the judge; the defendant argues that they are not a proper part of the record on appeal. The prior actions are specifically identified in the town's complaint, and we assume that their nature was discussed during the hearing. See *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.*, 367 Mass. 464, 472-473 (1975). We look to those papers solely to discover the nature of the claims asserted.

We turn to the town's claims of harm and consider those rights which may be lost irreparably if immediate relief is not granted. The town argues that there exists a substantial risk that it will be subject to groundless suits, absent an injunction, and that it has no adequate remedy at law. We have said that the ability to defend against groundless suits "is not an adequate remedy, for the plaintiff is entitled to complete and immediate freedom from vexation by the defendant." *Steinberg* v. *McKay*, 295 Mass. 139, 143-144 (1936). The town, however, has another remedy.

Under G. L. c. 231, § 6F, inserted by St. 1976, c. 233, § 1, the town may seek, in any civil action after judgment, its "reasonable counsel fees and other costs and expenses incurred in defending against such claims" which "were wholly insubstantial, frivolous and not advanced in good faith." This statute is intended to ameliorate the consequences of the "American rule," which denies a prevailing party the recovery of legal fees incurred in his litigation. *Commissioner of Ins.* v. *Massachusetts Accident Co.*, 318 Mass. 238, 241 (1945). Together with G. L. c. 231, § 6G, G. L. c. 231, § 6F, provides the town with a means of recovering its damages and of discouraging the maintenance of further insubstantial and frivolous actions by the same party. We note that the cases decided under § 6F have treated the statute's purposes sympathetically in order that its polices may be effectuated. See *Pollack* v. *Kelly*, 372 Mass. 469, 477 (1977); *Miaskiewicz* v. *LeTourneau*, 12 Mass. App. Ct. 880 (1981); *Katz* v. *Savitsky*, 10 Mass. App. Ct. 792 (1980). We conclude that the town has not demonstrated on this record that this remedy under G. L. c. 231, § 6F, would be inadequate if Goldstein persists in bringing actions which are "insubstantial, frivolous and not advanced in good faith." [6]

Several other considerations suggest the wisdom of this approach. Access to the courts should not be restricted un-

---

[6] If it could be shown that the party filing a frivolous action would be judgment proof or otherwise undeterred by the threat of liability under G. L. c. 231, § 6F, an injunction might become appropriate.

necessarily. See *United Transp. Union* v. *Michigan Bar,* 401 U.S. 576, 585 (1971) (collective activity undertaken to obtain meaningful access to the courts is a fundamental right). Moreover, the procedure described in the preliminary injunction for determining whether Goldstein may file an action is, in some degree, cumbersome.[7] It is also not clear against what standard Goldstein's future pleadings would be measured. Compare *Rudnicki* v. *Department of Mass. Attorney Gen.,* 362 F.2d 337, 338 (1st Cir. 1966) (party obliged to demonstrate meritorious case), with *Pavilonis* v. *King,* 626 F.2d 1075, 1079 (1st Cir. 1980) (pleadings must be sufficiently plain and definite to satisfy Fed. R. Civ. P. 8 and to warrant a response). Since Goldstein is not seeking merely to reopen closed cases, each complaint will have to be evaluated on its own merits. The interest of judicial economy and free access to the courts is served better by requiring the town to seek relief first under G. L. c. 231, § 6F.[8]

The town next argues that the threat of continued harassment of town officials and employees at their homes and places of employment by telephone calls and personal visits constituted a basis for injunctive relief as to this kind of activity. We agree. The allegations concerning Goldstein's behavior, which he does not specifically deny, suggest that he has acted beyond all reasonable bounds. Town officials have a legitimate expectation of privacy and freedom from harassment. Cf. *Galella* v. *Onassis,* 487 F.2d 986, 995 (2d

---

[7] The injunction simply provides that Goldstein is "hereby enjoined and restrained from commencing any action or proceeding legal or equitable in any court of the Commonwealth against plaintiff, its employees, elected or appointed officials, without obtaining the prior approval of this court."

[8] The remedy provided by G. L. c. 231, § 6F, does not extend to criminal proceedings. Thus, the remedy may be incomplete in that Goldstein has pressed criminal complaints against certain town employees. But the relief requested and granted by the injunction does not seem to cover criminal proceedings. Moreover, since Goldstein must file an application for issuance of process in a criminal case, little would be gained by requiring that he also obtain the prior approval of the Superior Court before filing that application.

Cir. 1973). This type of conduct intrudes in an intolerable manner on the private lives of town officials. It also threatens the very right Goldstein asks us to uphold. If such behavior is not restrained, town officials will be forced to make themselves less accessible to the public. Moreover, the willingness of private citizens to take a role in town government will be curtailed seriously. Public service should not be an ordeal. The harm here is great, and there is no adequate remedy at law.[9]

The town has also demonstrated a likelihood of success on the merits.[10] We reject the contention that conduct alleged here cannot be restricted consistent with the First Amendment rights to petition the government for a redress of grievances and to free speech. Those rights do not disable the government from taking reasonable steps to ensure that such rights are not exercised in a manner which infringes on the legitimate rights of other citizens. See *Erznoznik* v. *Jacksonville,* 422 U.S. 205, 209 (1975); *Cox* v. *Louisiana,* 379 U.S. 536, 554-555 (1965). Cf. *Batchelder* v. *Allied Stores Int'l, Inc., ante* 83, 93 (1983). This portion of the injunction does no more than restrain a serious abuse of First Amendment rights.

The harm here to Goldstein is minimal. Much of Goldstein's complaint is not that he has not had an opportunity

[9] Much of the harm here cannot be compensated through an action for damages. To the extent that each town official may have an action in tort, a multitude of suits would be required to vindicate their interests. Moreover, the limited extent of potential recovery may not justify the filing of such actions.

[10] Goldstein has denied any intention to harass. But his affidavit is barren of any facts which support his denial. It does not give any indication of the matters he wished to discuss. It does not deny the allegations contained in Stein's affidavit that he called Stein's business associates and superiors. "Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction." 11 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2949, at 469 (1973). Goldstein's affidavit is completely deficient in this respect.

In contrast, the town has filed affidavits with specific allegations and supporting facts. While the affidavits were not in every instance made on personal knowledge, that circumstance only goes to their weight. *Id.* at 470-472.

to speak or to petition. Rather, he objects to the town's rejection of his grievances. But the First Amendment does not impose any affirmative obligation on the government to listen to, and respond to, a citizen's grievances. *Smith* v. *Arkansas State Highway Employees Local 1315,* 441 U.S. 463, 464-465 (1979). Moreover, Goldstein's affidavit gives no indication whether the matters he wishes to discuss with town officials are of great concern or are trivial. Given our disposition of the case, Goldstein will be provided with adequate means of petitioning for redress. We conclude that the judge did not abuse his discretion by restraining Goldstein from communicating with town officials at their homes or places of employment.

The town's last claim of irreparable injury is that Goldstein, if not restrained, will continue to interfere with the normal operation of town government. We agree that the alleged conduct may adversely affect the ability of the town to operate efficiently. An inordinate amount of time may be spent contending with essentially frivolous matters. We are mindful that his behavior has the unfortunate effect of impairing the ability of town officials to respond to the legitimate grievances of other citizens. Thus, Goldstein properly may be restrained from harassing town employees.

But the injunction here reaches too far. Goldstein is absolutely prohibited from "communicating with the employees, elected and appointed officials of the Town of Brookline" except through mail and one telephone call on any business day to the board of selectmen. On its face, it prohibits Goldstein from attending public meetings, reporting emergencies to the appropriate town officials, or from inquiring as to the hours of town facilities. The injunction should be no broader than is required to protect the town from harassment. See *Galella* v. *Onassis,* 487 F.2d 986, 998 (2d Cir. 1979). We think it best that the Superior Court determine how the legitimate interest of the town to be free from harassment can be achieved without unduly infringing Goldstein's rights.

The interlocutory order on the preliminary injunction is vacated, and the case is remanded to the Superior Court for the entry of a new order in conformity with this opinion.

*So ordered.*