COUNTY OF BARNSTABLE & others[1] *vs.* COMMONWEALTH.

Suffolk. March 4, 1991. - June 5, 1991.

Present: WILKINS, ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Court House. County*, Lease of court house. *Commonwealth*, Lease of court house. *Court Reorganization Act. Constitutional Law*, Separation of powers, Judiciary.

In a proceeding by eleven counties and the town of Nantucket for relief under G. L. c. 211, § 3, arising from the Commonwealth's entry into leases, subject to appropriation, with the plaintiffs for courthouses pursuant to G. L. c. 29A, § 4, and the Legislature's subsequent failure to appropriate full funding for the rent, this court declined to exercise its inherent power to order the Commonwealth to pay the counties for the use of the courthouses in amounts in excess of legislative appropriations in the absence of evidence in the record as to the extent to which the courthouses currently leased from the counties are "reasonably necessary" within the principles set forth in *O'Coin's, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. 507 (1972); moreover, a single justice of this court properly denied the plaintiffs' requested relief and transferred the matter to the Superior Court to allow the parties to set forth their claims and develop the record more fully. [329-333]

Statement of the manner in which the record of an action brought pursuant to G. L. c. 211, § 3, was to be expanded on transfer by a single justice of this court to the Superior Court in order to provide a more appropriate basis for a decision on the possible exercise of this court's inherent power, or for the granting of some other form of relief. [333-335]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 25, 1990.

[1]The counties of Berkshire, Bristol, Dukes County, Essex, Franklin, Hampden, Hampshire, Norfolk, Plymouth, Worcester, and the town of Nantucket. Hereinafter these counties and the town of Nantucket will be referred to collectively as "the counties." Middlesex County, the only other county that leases courthouse facilities to the Commonwealth, is not a party to this action.

The case was heard by *Nolan*, J.

*Paul R. DeRensis* (*Eric I. Zucker* with him) for the plaintiffs.

*Dwight Golann*, Assistant Attorney General, for the Commonwealth.

ABRAMS, J. The Commonwealth entered into contracts subject to appropriation with eleven counties and the town of Nantucket for the lease of courthouse facilities and services for fiscal years (FY) 1990 and 1991 pursuant to G. L. c. 29A, § 4 (1988 ed.). The Legislature did not appropriate full funding for the leases for either year. The counties filed a complaint in the Supreme Judicial Court for Suffolk County pursuant to G. L. c. 211, § 3 (1988 ed.), requesting us to use our supervisory power to order the Commonwealth to pay the full amount of rent owed or, in the alternative, to require the judiciary to vacate that portion of the space leased for which it has not paid. A single justice denied the relief and transferred the case to the Superior Court. The counties appeal from that order. We affirm.[2] Transfer to the Superior Court permits appropriate amendments to the complaint and further proceedings in which each county may seek to establish its constitutional claim made on behalf of the judiciary.[3]

Prior to 1978, counties bore the cost of providing courthouses in the Commonwealth. See *County Comm'rs of Plymouth* v. *State Superintendent of Bldgs.*, 383 Mass. 262, 263 (1981). Pursuant to the Court Reorganization Act of 1978, St. 1978, c. 478, the Commonwealth assumed "[a]ll costs of maintenance and operation of the judicial branch." G. L. c. 29A, § 1 (1988 ed.). The law established a procedure whereby the Commonwealth leases courthouse space

---

[2] Because the contracts between the judiciary and the counties state that rental payments are subject to appropriations, we reject the Commonwealth's claim that breach of contract is an adequate remedy.

[3] Although FY 1990 is over and FY 1991 is almost completed, this matter should be expedited so that the counties may take appropriate action in FY 1992, including consideration of the transfer of land and buildings to the Commonwealth. See note 8, *infra*.

from the counties. The amount of rent is "equitably estab-
lished taking into account the cost of maintenance, repairs,
utilities and the annual debt service provided or paid by such
county." G. L. c. 29A, § 4. If the parties are unable to agree
to the amount of rent, the deputy commissioner of capital
planning and operations is to hold a hearing and establish the
rent, with a right of appeal to this court. *Id.*

In May, 1990, the Office of the Chief Administrative Jus-
tice of the Trial Court (Trial Court) approved submissions
from the counties documenting the cost of maintenance, re-
pairs, utilities, and debt service for the court facilities leased
from them. The Trial Court established a final FY 1990
rental amount of $31.4 million for all leased courthouses,
$19.7 million of which was owed to the plaintiff counties. At
the same time, however, the Trial Court notified the counties
that, due to limited legislative appropriations and executive
branch budget reductions, the Commonwealth would pay
only 68.8% of the approved rent. The counties requested a
hearing with the division of capital planning and operations
(DCPO) pursuant to c. 29A, § 4. A hearing officer estab-
lished the equitable rent at the level of costs approved by the
Trial Court. The Chief Administrative Justice then wrote to
the Chairs of the Committees on Ways and Means in both
the House and the Senate requesting a supplemental appro-
priation of $9.8 million to cover the 1990 rental deficiency.
He also suggested that the Legislature consider either fully
funding the courthouse rental accounts in FY 1991 or trans-
ferring ownership of the buildings to the Commonwealth.
The Legislature did not appropriate a supplemental amount,
and the counties involved in this case received $5.7 million
less than they were owed under the DCPO's decision.

For FY 1991, the Legislature appropriated $23.7 million
for the rental of court facilities. According to a letter from
an assistant attorney general, dated November 15, 1990,
$12.4 million of those appropriated funds are earmarked for
rent to the plaintiff counties. Although the equitable rent for
FY 1991 has not yet been established, the assistant attorney
general's letter estimated that the plaintiff counties would

need $21.7 million to run their courthouses in FY 1991, an estimate that the counties accept for purposes of this litigation. The earmarked funds for FY 1991, then, are $9.3 million short of the estimated costs to be incurred.[4]

The plaintiff counties filed this G. L. c. 211, § 3, complaint against the Commonwealth on September 25, 1990. They contend that they have been placed in the untenable position of being legally bound to continue providing court facilities to the Commonwealth, see *Commonwealth* v. *County of Suffolk*, 383 Mass. 286 (1981), without being able to obtain the reimbursement owed them under law. We have stated that "[a]ny lease [entered into pursuant to G. L. c. 29A, § 4] . . . would be subject to the availability of appropriated funds, and no obligation would be imposed on the Commonwealth in excess of available appropriations, and that fact should be made explicit in any agreement or decision in advance of appropriation. But if the amount of rent were 'established' by agreement or by decision of [the DCPO], the parties would be in a position to call the attention of the Legislature to the need and to ask that a specific amount be appropriated." *County Comm'rs of Plymouth* v. *State Superintendent of Bldgs.*, 383 Mass. 262, 267-268 (1981). The counties maintain that their attempts to pursue the suggested political remedy have been fruitless, and request our intervention to enforce the rental obligation.

Allocation of taxpayer dollars, especially in times of limited fiscal resources, is the quintessential responsibility of the popularly-elected Legislature, not the courts. Where our judicial responsibilities might overlap with political decision-making traditionally undertaken by another branch of government, we must proceed with caution. It may well be, however, that one or more counties are or will become financially incapable of continuing to provide these facilities without adequate State reimbursement. In such circumstances, the leg-

---

[4]According to the Commonwealth, on February 4, 1991, the Governor submitted a request for a supplemental appropriation for rent for the plaintiff counties and for Middlesex County totaling approximately $7 million, a request which still is pending before the Legislature.

islative underfunding of the rental account may threaten the continued viability of the judicial branch of government, and we would be obliged to intervene.

The constitutional establishment of a tripartite form of government carries with it an implied assumption that sufficient funds will be provided to operate all three branches. When the funds provided for the judicial branch are not enough to maintain a minimally adequate court system, the judiciary has the power to order the provision of such funds, with or without legislative appropriation. See *O'Coin's, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. 507 (1972). See S.J.C. Rule 1:05, as appearing in 382 Mass. 704 (1981).

In *O'Coin's*, a retail appliance store sought a writ of mandamus directing a county to pay an $86 invoice for tapes and a tape recorder requisitioned by a judge of the Superior Court for use during criminal sittings. The county treasurer had refused to make the payment, contending that the judge had no statutory power to commit county funds. We held that, even absent statutory authorization, "a judge may bind a county contractually for expenses reasonably necessary for the operation of [the] court." *Id.* at 509. We determined that "among the inherent powers possessed by every judge is the power to protect [the] court from impairment resulting from inadequate facilities or a lack of supplies or supporting personnel." *Id.* at 510. In the case before us, we must decide whether the deficiency of the rental reimbursement presents an appropriate occasion for the exercise of the extraordinary inherent powers set forth in *O'Coin's*.

Aside from the obvious disparity in the amount of money involved, important differences distinguish *O'Coin's* from this case. *O'Coin's* involved a judicial requisition of supplies from a private party, and we determined that the county was obliged to reimburse that party. Here the judicial branch has occupied space owned by the counties, and the counties ask us to order reimbursement from the Commonwealth. Unlike the appliance store in *O'Coin's*, the counties are subdivisions of the Commonwealth. They are "bounded and organized by

the Legislature for political purposes and the administration of government. They may be changed at the will of the Legislature . . . ." *Boston* v. *Chelsea,* 212 Mass. 127, 129 (1912). Thus, this case involves not the question whether the government is obliged to pay for the constitutionally necessary expenses of the judicial branch, but rather which organizational division of the government has the obligation to do so.

In *County Comm'rs of Plymouth, supra* at 267, we stated that the courthouse leases "would be subject to the availability of appropriated funds, and no obligation would be imposed on the Commonwealth in excess of available appropriations." Shortly thereafter, in *County of Suffolk, supra,* we upheld a preliminary injunction restraining the municipal defendants from reducing the existing level of courthouse services. Taken together, these cases establish that the counties' obligation to provide suitable courthouse facilities to the Commonwealth is independent of the Commonwealth's duty to pay rent, so that the obligation continues even when less than full funding is appropriated.

The Legislature set up a plan whereby the Commonwealth would be the primary source of funding for court facilities, but counties would retain secondary responsibility. Thus, following the enactment of the 1978 court reorganization legislation, the Legislature directed that county budgets be decreased "by those amounts *appropriated*" by the Commonwealth for the costs of county courts (emphasis added). St. 1979, c. 151, § 3. In requiring a reduction equal to the amounts appropriated rather than to the costs themselves, the Legislature seems to have acknowledged implicitly that the full costs of the courthouses might not be covered by a legislative appropriation. In such cases, the counties could retain funding in their budgets to cover those unreimbursed costs. See *County of Suffolk, supra* at 289. Therefore, in the absence of full rental reimbursement from the Common-

wealth, we think the Legislature intended the counties to finance the facilities themselves.[5]

In *O'Coin's*, we emphasized that "[t]he very conception of inherent power carries with it the implication that its use is for occasions not provided for by established methods. . . . [Only w]hen . . . [established] methods fail and the court shall determine that by observing them the assistance necessary for the due and effective exercise of its own functions cannot be had . . . does occasion arise for the exercise of the inherent power." *O'Coin's, supra* at 516, quoting *State ex rel. Hillis* v. *Sullivan*, 48 Mont. 320, 329 (1913). The counties have not shown that the "established methods" — the scheme of rental reimbursement from the Commonwealth backed by the residual duties of the counties — have failed. Their complaint, filed in September, 1990, asserts that "[i]t is anticipated that within the next six months, five counties will become insolvent" as a result of the underpayment. Yet there is no evidence in the record as to the counties' fiscal situations, either as a group or on an individual basis.

*O'Coin's* further contemplated the exercise of the inherent power only when necessary to protect the court from "impairment." *Id.* at 510. Only those expenses "reasonably necessary for the operation of [the] court" are to be judicially incurred. See *id.* at 509. The theoretical underpinnings of *O'Coin's* make it clear that the "impairment" referred to is an impairment of constitutional proportions. We stated that "implicit in the constitutional grant of judicial power is 'authority *necessary* to the exercise of . . . [that] power' " (emphasis in *O'Coin's*). *Id.* at 510, quoting *Opinion of the Justices*, 279 Mass. 607, 609 (1932). We also observed that the use of inherent judicial power to obtain necessary facilities is not contrary to the doctrine of separation of powers because "[i]t was never intended that any one department, through the exercise of its acknowledged powers, should be able to prevent another department from fulfilling its responsibilities

---

[5]Since the 1978 reorganization, the counties have received 100% of the equitable rent only in 1985, 1987, and 1988.

to the people under the Constitution." *Id.* at 511. Thus, the *O'Coin's* power may only be used to the extent that the facilities and supplies obtained are essential to the fulfilment of the courts' obligations under the Constitution. Compare *Woods* v. *State*, 233 Ind. 320, 324 n.3 (1954) (court has authority to order remodeling to provide facilities to segregate juries from witnesses), with *Committee for Marion County Bar Ass'n* v. *County of Marion, Ohio,* 162 Ohio St. 345 (1954) (court has no authority to order construction of elevator in courthouse). We have no evidence before us as to the extent to which the facilities currently leased from the counties are "reasonably necessary" within the meaning of *O'Coin's.* In the absence of such evidence, we will not exercise our inherent power to order the Commonwealth to pay the counties for the use of court facilities in amounts in excess of legislative appropriations.

Because of these extensive gaps in the record, the single justice's order denying G. L. c. 211, § 3, relief in the county court and transferring this matter to the Superior Court was proper. Transfer will allow the parties to set forth their claims and develop the record more fully, and provide a more appropriate basis for a decision on the possible use of our inherent power or for the granting of some other form of relief.

In the Superior Court, the burden will be on each county to establish that its available resources, combined with the rent appropriated by the Legislature, are insufficient to maintain and service the facilities occupied by the judicial branch at the contract level. Cf. *Commonwealth ex rel. Carroll* v. *Tate,* 442 Pa. 45, 55, cert. denied, 402 U.S. 974 (1971). If such an insufficiency is found, it will then be necessary to determine the extent to which the facilities and related services are reasonably necessary to the fulfilment of the court's constitutional duties. This is a determination that is more appropriately made by this court. In aid of these determinations, the counties should provide the relevant information on a county-by-county basis, perhaps on amended, severed complaints.

The counties carry the burden of proving in the Superior Court that there is no potential source of funding available to them to maintain the courthouse facilities at the contract price. They should submit comprehensive information regarding their budgetary and financial situations. Potential sources of funding to be examined include, but are not limited to, any general unappropriated balance in the county treasury; the Capital Improvement Fund, see G. L. c. 35, § 28B (i) (1988 ed.); the Reserve Fund, see G. L. c. 35 § 32 (1988 ed.), see *County Comm'rs of Middlesex County* v. *Superior Court*, 371 Mass. 456, 460-461 (1976); the Deeds Excise Fund, see G. L. c. 64D, §§ 11-12 (1988 ed.); possible savings in discretionary areas of the budget; additional borrowing capacity pursuant to G. L. c. 35, §§ 36A-39I (1988 ed.); and additional levy capacity pursuant to G. L. c. 35, §§ 30-31 (1988 ed.).[6] Only if these and other possible resources are inadequate would we consider using our inherent power to grant relief against the Commonwealth. A judge, therefore, should make a factual determination for each county as to whether it has exhausted all available resources and can no longer continue to provide court facilities and services for the judiciary at the contract price.

If the Superior Court makes such a determination for one or more counties, then it will become necessary to determine which expenditures for county facilities and services are essential to the fulfilment of the court's constitutional responsibilities. In connection with this determination, the counties should submit, again on a county-by-county basis and in as much detail as possible, a breakdown of the costs incurred in maintaining each county's various courthouses. The informa-

[6]We express no view at this juncture as to whether the counties and their constituent municipalities may be able to assert the limitations imposed by G. L. c. 59, §§ 20A and 21C (1988 ed.) ("Proposition 2 ½"), as a bar to the assessment to cover their obligation to provide courthouse facilities. Nor do we assess the impact of St. 1990, c. 150, § 2, item 1599-3658 (allowing counties to increase county taxes notwithstanding G. L. c. 59, § 20A, if approved by two-thirds of cities and towns) on the counties' obligation to look to all sources of revenue to maintain the facilities and services at the contract price.

tion supplied by the counties to the DCPO pursuant to the establishment of the equitable rent may be relevant in this regard.

When the record contains such information, then and only then shall we be in a position to decide whether the level of facilities and service provided for in a county's contract is more than is constitutionally required.[7] If it is, we may decide to relieve that county of its obligation to provide the contract level of facilities and services. At the same time, we may use our inherent power to order the Commonwealth to pay for those reasonably necessary facilities and services that cannot be fully financed by the appropriated rent and available county resources. It is the parties' obligation to ensure that the record is sufficiently developed to permit us to exercise these powers.

In conclusion, oversight of the public fisc is a responsibility that, in the normal scheme of things, is within the Legislature's sole province. In present circumstances, the Legislature implicitly has determined that partial funding for courthouse facilities is to come from the counties. Because county governments exist at the will of the Legislature, it is within the Legislature's powers to do so. We may interfere with the Legislature's action only on proof that its decision results in insufficient provision for the judiciary's constitutionally required needs. We acknowledge that the counties have been placed in a difficult position, and that their financial viability may be at stake. The problem, however, is the creation of the Legislature, and can be relieved by the Legislature. It may be removed prospectively by any county that elects to turn over court facilities to the Commonwealth pursuant to St. 1988, c. 203, § 18.[8]

---

[7]After the record is complete, the parties should move to retransfer this matter to this court. See G. L. c. 211, § 4A.

[8]In order to transfer buildings and land occupied by the judicial branch to the Commonwealth, the question of transfer must be submitted to voters at a State election. If approved by the voters, the transfer of the buildings and land is effective the following July. See St. 1988, c. 203, §§ 17 and 18.

For the foregoing reasons, the single justice's order denying relief and transferring the counties' case to the Superior Court is affirmed. Further proceedings should take place in accordance with this opinion.

*So ordered.*