LISA HEALEY & others [1] *vs.* COMMISSIONER OF PUBLIC
WELFARE
(and a companion case).

Suffolk. December 10, 1992. - December 23, 1992.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Aid to Families with Dependent Children. Injunction. Practice, Civil,* Pre-
liminary injunction. *Statute,* Construction. *Words,* "Guarantee."

In an action by recipients of Aid to Families with Dependent Children
(AFDC) who were participating satisfactorily, on a voluntary basis, in
a Job Opportunities and Basic Skills (JOBS) program, a training vehi-
cle which the Commonwealth was required by Federal law to create as
a condition of its participation in the AFDC program, a judge in the
Superior Court properly granted preliminary relief enjoining the Com-
missioner of Public Welfare from denying child-care services to the
plaintiffs and others similarly situated, where the plaintiffs demon-
strated likelihood of success on their contention that applicable provi-
sions of the Social Security Act, 42 U.S.C. §§ 301 et seq., as amended
by the Family Support Act of 1988, Pub. L. No. 100-485, 102 Stat.
2343 (1988), required the Department of Public Welfare to provide
child care to JOBS participants in the plaintiffs' circumstances, irre-
spective of its funding limitations [21-27], and where the plaintiffs
showed a substantial risk of irreparable harm to themselves and others
similarly situated if preliminary relief were not granted [27-28].
LYNCH, J., dissenting.

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 19, 1992.

A motion for preliminary injunctive relief was heard by
*Margot Botsford,* J.

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on November 24, 1992.

---

[1]Maritza Perez and Katrin Hallen, on behalf of all other similarly
situated persons.

On transfer of the first action to the Supreme Judicial Court for the county of Suffolk, the cases were reported by *Abrams*, J.

*Douglas H. Wilkins*, Assistant Attorney General, for the defendant.

*Deborah Harris* for the plaintiffs.

GREANEY, J. The plaintiffs are recipients of Aid to Families with Dependent Children (AFDC) who need child care in order to participate in education or training programs approved by the Department of Public Welfare (department), in connection with its "MassJOBS" program. The plaintiffs commenced an action in the Superior Court to challenge the validity of the department's limitation of child care for AFDC recipients, who, like the plaintiffs, are in a department-approved education or training program but whose individual employment or training plan was not approved by the department before September 4, 1992. The plaintiffs claimed that the department's policy violates the provisions of the Social Security Act, 42 U.S.C. §§ 301 et seq., as amended by the Family Support Act of 1988, Pub. L. No. 100-485, 102 Stat. 2343 (1988). The plaintiffs sought a preliminary injunction to enjoin the department from failing to provide child-care services to AFDC recipients who are participating in approved education or training activities.

A judge in the Superior Court granted the plaintiffs' request for a preliminary injunction. The department appealed from the injunction to the Appeals Court pursuant to G. L. c. 231, § 118, second par. (1990 ed.), and a stay of the injunction (extending a stay granted by the Superior Court judge) was granted by a single justice of the Appeals Court. The plaintiffs then petitioned a single justice of this court pursuant to G. L. c. 211, § 3 (1990 ed.), to vacate the stay. The single justice ordered the action transferred pursuant to G. L. c. 211, § 4A (1990 ed.), and reserved and reported the merits of the case to the full court. We now affirm the grant of the preliminary injunction.

The facts are undisputed. The Social Security Act, as amended by the Family Support Act of 1988 (FSA), re-

quires every State participating in the AFDC program to create a "Job Opportunities and Basic Skills" (JOBS) program to provide training, education, and work opportunities for those receiving AFDC benefits. 42 U.S.C. §§ 681 et seq. (1988). The Massachusetts JOBS program is called Mass-JOBS. The program is designed to change the nature of the welfare system by creating opportunities for AFDC recipients to further their education and training and ultimately to remove themselves from the welfare rolls by gaining self-sufficiency through meaningful employment. 42 U.S.C. § 681 (a). 45 C.F.R. § 250.0 (1992).

Each plaintiff is an AFDC recipient with a minor child or children. Each plaintiff has voluntarily enrolled in an education or training program approved by the department and has sought child care in order to continue her education or training. Each plaintiff has been advised by the department that she will not immediately receive child care because her education or training plan was not approved prior to September 4, 1992. That date is significant because the department has placed AFDC recipients whose employment or training plans are approved thereafter, and who request child care, on a waiting list. When a child-care slot becomes available, it is to be filled from the waiting list. The department's action was taken in anticipation that the funds appropriated this fiscal year for child care may not be sufficient to provide that benefit for all AFDC recipients who meet current criteria for participation in MassJOBS. As a practical matter, the wait-listing policy operates as a denial of child care because there is no indication that child-care slots are becoming available on any regular basis, if at all.

The Superior Court judge applied the traditional test for consideration of a preliminary injunction. A trial court's decision to issue or to deny a preliminary injunction requires "an evaluation in combination of the moving party's claim of injury and its chance of success on the merits. If there is a substantial risk of irreparable harm to the moving party, it must be balanced against any similar risk to the other party in the light of the chance of each party to succeed on the

merits." *Commonwealth* v. *County of Suffolk*, 383 Mass. 286, 288 (1981), citing *Packaging Indus. Group* v. *Cheney*, 380 Mass. 609, 617 (1980). See *Westinghouse Broadcasting Co.* v. *New England Patriots Football Club, Inc.*, 10 Mass. App. Ct. 70, 72 (1980). "Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue." *Packaging Indus. Group* v. *Cheney, supra.* See *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue*, 406 Mass. 701, 710 (1990). We first consider whether the plaintiffs have shown a likelihood of success, namely whether they have demonstrated that applicable Federal law requires the department to provide child care to MassJOBS participants in their circumstances.

As noted, the FSA requires each State, as a condition of participation in the AFDC program, to create a JOBS program. 42 U.S.C. §§ 681 et seq. As a condition of receiving public support, AFDC recipients in turn are required to participate in a State's JOBS program, 42 U.S.C. § 602 (a)(19),[2] unless they are exempt from required participation by statute. 42 U.S.C. § 602 (a)(19)(C). Among those exempt from required participation are the caretakers of children under the age of six years. 42 U.S.C. § 602 (a)(19)(C)(iii)(II). A State's JOBS program also must permit exempt individuals to volunteer for participation. 42 U.S.C. § 602 (a)(19)(B)(i)(II). The plaintiffs in this case

---

[2]Specifically, the Social Security Act provides that each State's plan must have in effect a JOBS program meeting the requirements of 42 U.S.C. §§ 681 et seq., and that "the State will (except as otherwise provided in this paragraph or part F of [42 U.S.C. §§ 681 et seq.]), to the extent that the program is available in the political subdivision involved and State resources otherwise permit—

"(I) require all recipients of aid to families with dependent children in such subdivision with respect to whom the State guarantees child care in accordance with [subsection g of this section] to participate in the program; and

"(II) allow applicants for and recipients of aid to families with dependent children . . . who are not required under subclause (I) to participate in the program to do so on a voluntary basis." 42 U.S.C. § 602 (a)(19).

who have volunteered to participate in MassJOBS and who are involved in the wait-listing policy, are caretakers of children under six years.

Participants in a State's JOBS program are entitled to certain support services necessary for participation, including transportation costs and other work-related expenses. 42 U.S.C. § 602 (g)(2). A separate provision of the FSA provides that "[e]ach State agency *must guarantee* child care in accordance with subparagraph (B)[3] . . . for each individual participating in an education and training activity . . . if the State agency approves the activity and determines that the individual is satisfactorily participating in the activity" (emphasis added).[4] 42 U.S.C. § 602 (g)(1)(A)(i)(II). The plaintiffs are individuals participating satisfactorily in State-approved education and training activities.

In a cooperative Federal-State program such as AFDC, the States "are given the choice of complying with the conditions set forth in the [Federal legislation creating the program] or forgoing the benefits of federal funding." *Pennhurst State Sch. & Hosp.* v. *Halderman,* 451 U.S. 1, 11 (1981). See *Miller* v. *Youakim,* 440 U.S. 125, 135 (1979); *Town-*

---

[3]Subparagraph (B) provides, in pertinent part, as follows:

"The State agency may guarantee child care by—
    "(i) providing such care directly;
    "(ii) arranging the care through providers by use of purchase of service contracts, or vouchers;
    "(iii) providing cash or vouchers in advance to the caretaker relative in the family;
    "(iv) reimbursing the caretaker relative in the family; or
    "(v) adopting such other arrangements as the agency deems appropriate." 42 U.S.C. § 602 (g)(1)(B).

This legislation also sets a ceiling on the amount a State spends for child care that will qualify for Federal matching funds, and sets minimum standards for the quality of the child care provided, including that it must meet State and local safety conditions, and that parental access must be allowed. 42 U.S.C. § 602 (g)(3)(B).

[4]The State also must guarantee child care "for each family with a dependent child requiring such care, to the extent that such care is determined by the State agency to be necessary for an individual in the family to accept employment or remain employed." 42 U.S.C. § 602 (g)(1)(A)(i)(I).

*send* v. *Swank*, 404 U.S. 282, 286 (1971). The State, however, must be able to ascertain the extent of its obligations from the terms of the Federal legislation. "[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Suter* v. *Artist M.*, 112 S. Ct. 1360, 1366 (1992), quoting *Pennhurst State Sch. & Hosp.* v. *Halderman, supra* at 17. The plaintiffs maintain that the language quoted above, couched as it is in terms of a "guarantee," unambiguously requires the Commonwealth to provide them with child care meeting FSA specifications. We agree.

A "guarantee" requires the guarantor "to become responsible for the fulfillment of" an act, or "to undertake to do or secure something." Webster's New Int'l Dictionary 1110 (2d ed. 1959). A guarantee, like a contractual promise, normally is unconditional unless any limitation is stated explicitly. The FSA makes a State's participation in the AFDC program dependent on its guarantee, or promise, that it will appropriate sufficient funds to provide child care for AFDC recipients who are satisfactorily participating in training or education programs that the State has ascertained are likely to lead to employment. The language of the Federal legislation does not in any respect purport to condition the State's obligation to provide child care on the availability of funds.[5]

The plain language of the Federal law, therefore, appears sufficient to resolve the likelihood of success question which is critical to the injunction. See *INS* v. *Cardoza-Fonseca*, 480 U.S. 421, 431-432 (1987). It is worth noting as well that legislative history supports the conclusion that the depart-

---

[5]In further support of this reading of the legislation, we note the obviously conditional language of 42 U.S.C. § 602 (i), governing the provision of child care to families at risk of becoming eligible for AFDC. In § 602 (i)(1)(C), Congress determined that "[e]ach State agency *may, to the extent that it determines that resources are available*, provide child care . . . to any low income family [at risk of becoming eligible for AFDC]" (emphasis added). Congress knew how to condition the obligation to provide child care on the availability of a State's resources. See *Russello* v. *United States*, 464 U.S. 16, 23 (1983). See also *INS* v. *Cardoza-Fonseca*, 480 U.S. 421, 432 (1987).

ment's obligation to provide child care cannot depend on the amount of its annual appropriation. In this regard, the House conference report states: "The conference agreement provides that the State agency *must guarantee* child care to the extent it is determined by the agency to be necessary for an individual's employment. The State agency *must also guarantee* child care for education and training activities (including participation in the JOBS program) if the State agency approves the activity and determines that the individual is satisfactorily participating in the activity" (emphasis added).[6] H.R. Conf. Rep. No. 100-998, 100th Cong., 2d Sess. 160 (1988), reprinted in 1988 U.S.C.C.A.N. 2879, 2948.

The department argues, however, that the child-care "guarantee" is only a conditional one, and that the department is free to restrict the provision of child care, or to deny child care altogether, if this result is necessitated by limited State resources. In making this argument, the department points to other provisions of the legislation which provide that the State must, "*to the extent that* the [JOBS] program is available in the political subdivision involved and *State resources otherwise permit*," require nonexempt AFDC recipients "*to whom the State guarantees child care in accordance with section 602(g)*," to participate in its JOBS program (emphasis added). 42 U.S.C. § 602 (a)(19)(B)(i)(I). The department contends that the italicized provisions implicitly recognize that, due to fiscal constraints, a State may not be able to guarantee child care to all nonexempt participants, and that the remedy for a State's failure to provide child

---

[6]The United States Department of Health and Human Services (HHS) commentary on its final regulations implementing the FSA also supports the plaintiffs' position: "The Statute requires the State to guarantee child care for participants in a JOBS activity; individuals in other approved education or training activities; and employed individuals. *We, therefore, believe that the State is obligated to guarantee care even if it has not required an individual to participate or accept employment*" (emphasis added). 54 Fed. Reg. 42,217 (Oct. 13, 1989). The HHS interpretation of the FSA, if reasonable, is entitled to deference. *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984).

care is to relieve AFDC recipients from required participation in JOBS. The department further maintains that there is no basis for concluding that Congress intended to treat non-exempt JOBS participants differently from voluntary participants with respect to the provision of child care. According to the department, it is unlikely that Congress would make explicit provisions for the lack of child care if it intended to impose on the States an unconditional obligation to provide child care.

The Superior Court judge rejected this argument. She read 42 U.S.C. § 602 (a)(19), together with the FSA's guarantee of child care to individuals in the plaintiffs' situation, as providing: (a) that the department does not have an obligation to guarantee child care to every AFDC recipient who needs it; but (b) that the legislation unambiguously guarantees it to the plaintiffs' class of AFDC recipients who have volunteered for participation in MassJOBS and whose participation has been accepted by the approval of their employment or training plans. The judge apparently concluded that the Federal legislation permits the department to discriminate in the provision of child care between AFDC recipients required to participate in MassJOBS (as to whom the department could deny child care and exempt the individual from required participation), and volunteers (as to whom the department is required to provide child care).

We agree with the judge that the provisions relied on by the department cannot logically be read as conditioning the plaintiffs' right to child care on the State's annual appropriations decision. We also discern some basis in the language of 42 U.S.C. § 602 (a)(19), see note 2, *supra*, for distinguishing, as the judge did, between voluntary MassJOBS participants and individuals who are required to participate, but we analyze one of the provisions differently.

Provisions of legislation addressing similar subject matter are to be construed together to make "an harmonious whole consistent with the legislative purpose," *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981), and to avoid rendering

any part of the legislation meaningless. See *Commonwealth v. Neiman*, 396 Mass. 754, 757-759 (1986). As did the judge, we agree that the department has flexibility and discretion with respect to the MassJOBS program, and it is entitled to take into account resource limitations in ways that may affect indirectly the provision of child care to AFDC recipients. The reference in 42 U.S.C. § 602 (a)(19)(B)(i), to "the extent that . . . State resources otherwise permit," however, is to the general composition of a State's JOBS program, not to funding for child care. The legislation grants participating States considerable leeway in choosing the components of their JOBS programs. See 42 U.S.C. § 682 (d), (e), (f), and (g). See also 45 C.F.R. §§ 250.46, 250.47, 250.48 (1992). A State's decision concerning the composition of its JOBS program may limit indirectly an AFDC recipient's right to child care if the educational or training program proposed by the individual is not an approved part of the JOBS program.[7]

The other provision in the legislation on which the department relies provides that a State must require participation in its JOBS program by nonexempt AFDC recipients "to whom the State guarantees child care in accordance with section 602 (g)." The department suggests that this language constitutes an implicit recognition that State resources may be insufficient to provide child care to all nonexempt participants. We think this language only recognizes that the FSA does not require the State to be a direct provider of child care meeting FSA standards, if, for reasons other than a shortage of funds, such child care is not available. The FSA

---

[7]The department points out that the named plaintiffs are all in postsecondary education programs, and that postsecondary education is a discretionary component of a State's JOBS program. 42 U.S.C. § 682 (d)(1)(B). The department argues that, because it has the discretion to rewrite its JOBS program to exclude postsecondary education which would foreclose the plaintiffs from JOBS participation and the provision of child care, it should be able simply to deny them child care based on a shortage of resources. The fact that the department could exclude certain components from MassJOBS does not mean that, having included those components, the department is free to ignore the mandates of the FSA.

provides the State with five alternative means of "guaranteeing" child care. See note 3, *supra*. A State may provide the care directly, but it is not required to do so. If, for example, the State chooses to offer vouchers to caretaker relatives, or seeks to enter contracts for the provision of services (both acceptable means of guaranteeing child care), a shortage of providers meeting FSA standards might result in a State's failure to provide care. In such instances, the legislation provides that the State may not require otherwise nonexempt participants to participate in its JOBS program.[8] We think this is a reasonable interpretation of the legislation, and one that honors both the importance of the child-care guarantee and the FSA's purposes and goals. We conclude that the plaintiffs have shown a likelihood of success on the merits of their action.

The plaintiffs have also demonstrated that "without the requested relief, [they] may suffer a loss of rights that cannot be vindicated should [they] prevail after a full hearing on the merits." *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue*, 406 Mass. 701, 710 (1990), quoting *Packaging Indus. Group* v. *Cheney*, 380 Mass. 609, 616 (1980). If the plaintiffs do not receive notice that the State will honor the FSA's child-care guarantee in sufficient time to make child-care arrangements, their educational or training activities will be delayed for an indefinite period or may be displaced

---

[8]Our interpretation also finds support in the HHS final regulations implementing the FSA:

"In areas where child care of the appropriate type cannot be located by JOBS participants, the State must be prepared to assist these individuals in locating care. Such assistance may take the form of referral to existing child care resource and referral services, or direct assistance based upon information gathered through the State agency's own consultation, coordination, and research efforts. In addition, the State may provide assistance to other AFDC applicants and recipients in locating such care. However, the State is not required to provide child care directly or to otherwise create child care services. Where child care cannot be located, an individual cannot be required to participate, or to accept or retain employment." 54 Fed. Reg. 42,217 (Oct. 13, 1989).

permanently. Some may become liable immediately for the repayment of educational loans. The department does not seriously dispute that lack of child care may impose significant harm to someone trying to attend or complete an educational or training program. Nonetheless, the department suggests that the balance of the harms does not favor the grant of a preliminary injunction because of the likelihood of harm to other recipients of public assistance whose benefits could be reduced if the department is forced to honor the plaintiffs' asserted right to child care. We rejected a similar argument in *Woods* v. *Executive Office of Communities & Dev.*, 411 Mass. 599, 606 (1992) (reasonableness of agency's decision to reduce subsidies to all tenants in light of reduction in Legislature's appropriation for the program insufficient to overcome statutory language). We also reject the contention here. The allocation of scarce public resources will inevitably harm some individuals, but this consideration cannot excuse the department from compliance with the categorical terms of Federal legislation governing the MassJOBS program. We are not persuaded by the argument that the injunction will harm the public interest by possibly requiring the department to overspend its budget. Cf. *Commonwealth* v. *Mass. CRINC*, 392 Mass. 79, 88-90 (1984) (in action to enjoin violation of law, preliminary injunction could enter because requested order within public interest). There are several means available to the department to comply with the injunction and avoid a fund shortage before that issue becomes critical. The balance of harms favors the plaintiffs.

A judgment is to be entered in the Supreme Judicial Court for the county of Suffolk vacating the stay of the preliminary injunction, affirming the grant of the injunction and remanding the case to the Superior Court for such further proceedings as may be appropriate based on this opinion.

*So ordered.*

LYNCH, J. (dissenting). I agree with the court that, "if Congress intends to impose a condition on the grant of fed-

eral moneys, it must do so unambiguously." *Suter* v. *Artist M.*, 112 S. Ct. 1360, 1366 (1992), quoting *Pennhurst State Sch. & Hosp.* v. *Halderman*, 451 U.S. 1, 17 (1981). I dissent because I do not believe that the Family Support Act (Act) unambiguously requires the Commonwealth to provide child care to the plaintiffs absent legislative funding.

The Act mandates that each State create a JOBS program and that the State will *"to the extent that the program is available . . .* and *State resources otherwise permit . . .* (I) require all recipients of aid to families with dependent children in such subdivision *with respect to whom the State guarantees child care in accordance with [subsection g]* to participate," 42 U.S.C. § 602 (a)(19)(B) (1988), and further that the State must guarantee child care to each participating individual *in accordance with subparagraph (B).* 42 U.S.C. § 602 (g) (1988). I read the provision specifically mandating child care as being subject to the language of subparagraph (B) "to the extent . . . resources otherwise permit." I conclude, therefore, that Congress intended child care to depend on the availability of State resources, like the rest of the program.

Furthermore, the court acknowledges that the Act gives the department discretion and flexibility with respect to the MassJOBS program, even when limiting the program indirectly affects child care. However, the court concludes that this discretion only applies to the general composition of the JOBS program, and not to funding child care. *Ante* at 26. I contend that, since Congress allowed the State to be flexible in funding the over-all MassJOBS programs, it presumably would also want to allow the same flexibility in funding the child care aspect.

The court agrees that there was "some basis in the language of [the statute]" to distinguish between voluntary and nonexempt participants. *Ante* at 25. However, the court concludes that the child-care "guarantee" extended to both groups. I disagree. A cursory reading shows that the statute distinguishes between those required to participate in the program and those who can volunteer. Those required to par-

ticipate can be nonetheless exempt if the State cannot provide child care to them. As to those who volunteer for the program, however, the statute is silent. Thus, from reading the statute as "an harmonious whole," *ante* at 25-26, it appears the department need not provide child care to those who volunteer for the program.

The court acknowledges that the programs in which all the plaintiffs participate are a discretionary component of the JOBS program and could be eliminated. *Ante* at 26 n.7. However, the court decides that, once the department has included such a discretionary component, it must then provide "guaranteed" child care for those enrolled in that component. I do not think that Congress's intent was to require the State to fund child care for voluntary participants in a discretionary program of MassJOBS that the State could eliminate entirely.

We were told at oral argument that, if the injunction stands, the MassJOBS program will run out of funding in May. Thus, the department will be forced to cut the program, causing both nonexempt and voluntary participants to lose services, assuming that the Legislature does not provide additional funding. I fail to see how cuts to the over-all program benefit anyone. In any case the decision to cut the program or to curtail child care seems to be a policy decision better left to the executive department rather than being decided by judicial decree.

The plaintiffs have not demonstrated that the Act requires the department to provide child care to the plaintiffs. At the most, the statute is ambiguous on the point. As such, I do not believe that the plaintiffs have shown a likelihood of success on the merits. In addition, I do not believe that the plaintiffs have shown that their harm without the injunction will be greater than the harm to other participants in the MassJOBS program with the injunction, particularly since entire programs may be cut for lack of funding. I, therefore, respectfully dissent.