GTE PRODUCTS CORPORATION *vs.* JEFFERSON DAVIS
STEWART, THIRD.

Essex. December 10, 1992. - April 6, 1993.

Present: ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Injunction. Practice, Civil,* Discovery, Preliminary injunction.

In litigation between an attorney and a corporation that formerly had em-
ployed him as its in-house counsel, the record supported the judge's de-
nial of preliminary injunctive relief that would have required the attor-
ney to return to the corporation certain documents containing
confidential information, where the corporation made no showing of ir-
reparable harm, other than its claim that possession of the documents
might give the attorney an advantage in the litigation, and where the
judge granted an injunction prohibiting the attorney from disclosing the
information contained in the documents. [724-726]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 16, 1991.

A motion for preliminary injunctive relief was heard by
*John T. Ronan*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Arthur G. Telegen* (*Nina Joan Kimball* with him) for the
plaintiff.

*Earle C. Cooley* (*Paul F. Beckwith* with him) for the
defendant.

ABRAMS, J. GTE Products Corporation (GTE) commenced
this action against Jefferson Davis Stewart, III, its former in-
house counsel, seeking preliminary and permanent injunctive
relief, as well as damages. GTE claimed that (1) Stewart vi-
olated the attorney-client privilege, his ethical obligations as
a member of the Kentucky bar, and the disciplinary rules of
this court by disclosing certain documents to his own attor-

ney; and (2) by removing or not returning the documents, Stewart unlawfully converted them to his own use. Stewart counterclaimed against GTE, alleging (1) wrongful discharge; (2) breach of the implied covenant of good faith and fair dealing; (3) conspiracy to commit wrongful discharge; and (4) intentional infliction of emotional distress.

A Superior Court judge, after hearing, declined to issue a preliminary injunction ordering the return of the documents but did enter an order prohibiting Stewart from any further disclosure. Pursuant to G. L. c. 231, § 118, second par. (1990 ed.), GTE appeals from the portion of the interlocutory order in which the judge declined to order Stewart to return the documents.[1] We transferred this case on our own motion. We affirm.

*Standard of review.* In reviewing a denial of a request for a preliminary injunction, we determine whether the judge abused his discretion. *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 615 (1980). "[W]hile weight will be accorded to the exercise of discretion by the judge below, if the order was predicated solely on documentary evidence we may draw our own conclusions from the record." *Id.* at 616. The judge heard argument but did not take any evidence. We therefore review the record to determine whether it "supports the judge's resolution of the factual questions before him." *Id.* at 622.

*Standard for preliminary injunction.* "[W]hen asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party's claim of injury and chance of success on the merits. If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irrepa-

---

[1] In its notice of appeal, GTE also suggested it was appealing from the judge's ruling to the extent it did not prohibit Stewart from disclosing further documents to his attorneys. Because GTE has not argued this issue on appeal, it is deemed waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975); *Walsh* v. *Chestnut Hill Bank & Trust Co.*, *ante* 283, 285 n.2 (1993).

rable harm which granting the injunction would create for the opposing party. . . . Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue." (Footnote omitted.) *Packaging Indus. Group, Inc.* v. *Cheney, supra* at 617. "In an appropriate case, the risk of harm to the public interest also may be considered." *Brookline* v. *Goldstein*, 388 Mass. 443, 447 (1983).

We summarize the facts. GTE Service Corporation, an affiliate of the plaintiff, employed Stewart as in-house counsel.[2] At some point in August, 1991, Stewart's employment at GTE terminated. Stewart retained an attorney who wrote to GTE informing it of Stewart's claim of wrongful discharge. Through this letter, GTE became aware that Stewart had various documents.[3] GTE brought suit to recover these documents and Stewart counterclaimed for wrongful discharge. At GTE's request, the action has proceeded under seal.

In his order on GTE's motion for a preliminary injunction, the judge determined that "it appears that . . . upon leaving his employment Stewart took with him certain documents containing privileged and confidential information."[4] In his order, the judge noted that there was "a serious dispute factually as to whether Stewart voluntarily and unilaterally severed his employment or whether he was effectively pushed out the door as too confrontational, unsuited for advancement and terminated in retaliation for his strong stand on issues of public safety regarding plaintiff's products." The judge declined to order the return of the documents. He did,

---

[2]The defendant appears to raise a factual dispute as to whether he had an attorney-client relationship with the plaintiff itself. The judge assumed that there was such a relationship and, on appeal, we also make that assumption.

[3]At oral argument, Stewart represented that he kept copies of all his files at home and that his superiors knew it. In his answer to GTE's complaint, he admitted retaining documents, but denied that his possession of the documents was actionable.

[4]We accept the judge's findings for the purposes of this review, although we do not decide whether every document reproduced in the record is privileged or contains privileged information.

however, issue "an interlocutory order prohibiting the defendant Stewart, his agents, servants and any person acting in concert with Stewart from any further disclosure of any, every, and all communications[,] documents, materials, that has occurred between plaintiff corporation and the defendant employee-attorney Stewart [see note 2, *supra*] which arose out of the employment relationship which had to do with the defendant rendering legal services, advices, or opinions."

*Harm to the plaintiff.* GTE claims that denial of so much of the request for a preliminary injunction as would have ordered Stewart to return the privileged documents causes irreparable harm to the confidence and trust GTE has placed in its in-house counsel. GTE cites various cases where courts issued injunctions prohibiting lawyers from disclosing confidential information.[5] This is precisely what the judge ordered in this case.

A plaintiff experiences irreparable injury if there is no adequate remedy at final judgment. See Leubsdorf, The Standard for Preliminary Injunctions, 91 Harv. L. Rev. 525, 551 (1978). In determining the harm to the plaintiff, the court need consider only the harm that would not be redressed by final relief. *Id.* at 541. In awarding preliminary injunctive relief, a court is justified in requiring the plaintiff to bear a slightly heavier burden, given the problems of enforcing injunctions. See *id.* at 547. The judge prohibited any further

[5]For example, GTE cites an unreported Connecticut Superior Court case dealing with the question of irreparable harm. International Business Mach. Corp. *vs.* Murray, Conn. Super. Ct., CV 90-0107445 (June 29, 1990). In that case, the plaintiff (IBM) claimed that "there would be severe damage to the proper functioning of the company if its executives believe that there is no confidentiality between themselves and IBM lawyers." Murray wished to disseminate various documents to area newspapers, and in fact previously had done so in violation of a temporary restraining order. In finding Murray in contempt, the judge agreed that "disclosure constitutes irreparable harm." We need not decide whether we would be guided by a Connecticut lower court's ruling because the case is inapposite. The judge issued an order prohibiting disclosure other than to Stewart's attorneys. GTE has not argued on appeal that Stewart should not be able to disclose to his attorneys. See note 1, *supra*. Counsel for Stewart has not challenged the breadth of the judge's order.

disclosure of the documents, thereby eliminating any chance of harm to GTE from public disclosure. GTE has not shown that allowing Stewart simply to retain the documents until either the hearing on the merits or a pretrial motion challenging the use of any document or requesting that a deposition not take place would create any irreparable harm.[6]

GTE's main claim is that allowing Stewart to retain the documents gives Stewart a litigational advantage that a suppression order would not cure. GTE states that, even if the judge refused to admit the documents as evidence, it has been injured because Stewart's attorneys in the wrongful discharge case may use the privileged communications to identify witnesses to depose and to learn additional facts about the case. GTE does not cite any cases supporting this proposition. The inference drawn from GTE's claim is that it has a right to a long and expensive discovery procedure and that allowing Stewart to bypass that process gives him a litigational advantage. "The conduct and scope of discovery is within the sound discretion of the judge." *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 799 (1987). We reject the claim that there is a right to compel long and expensive discovery and that loss of that litigational advantage is an irreparable injury.

The purposes for which the discovery rules exist "are to avoid surprise and the possible miscarriage of justice, to disclose fully the nature and scope of the controversy, to narrow, simplify, and frame the issues involved, and to enable a party to obtain the information needed to prepare for trial. In this way it was sought to put an end to the 'sporting theory of justice,' by which the result depends on the fortuitous availability of evidence or the skill and strategy of counsel." (Footnote omitted.) 8 C.A. Wright & A.R. Miller, Federal Practice & Procedure § 2001, at 17-19 (1970). Stewart has an interest in a full hearing and in the "freedom to act in

---

[6]This is particularly true where, as here, there is a factual dispute as to whether the documents were retained by Stewart with the knowledge and consent of his superiors or were converted wrongfully.

ways not yet shown to be unlawful." Laycock, The Death of the Irreparable Injury Rule, 103 Harv. L. Rev. 688, 732 (1990).

GTE, as "the moving party[,] must show that, without the requested relief, it may suffer a loss of rights that cannot be vindicated should it prevail after a full hearing on the merits." *Packaging Indus. Group, Inc.* v. *Cheney, supra* at 616. We do not perceive a litigational advantage that the judge could not cure through judicial control of discovery. We reject the inference in GTE's brief that it will suffer irreparable harm because it cannot control and delay discovery.[7]

GTE did not carry its burden of showing it would suffer an irreparable harm absent an injunction requiring Stewart to return the documents. Therefore there was no error in not ordering the defendant to return documents to the plaintiff.[8]

*Order affirmed.*

---

[7]In *Packaging Indus. Group, Inc.* v. *Cheney, supra* at 616 n.10, we noted: "The risk that a party will suffer irreparable harm during the time between the hearing on the preliminary injunction and final adjudication on the merits may be minimized by consolidating the trial on the merits with the preliminary hearing." On the record before us, GTE did not request such consolidation.

[8]Because we conclude that the plaintiff has failed to show irreparable harm, we do not consider or address any other issues raised.