Gants, J.
The plaintiff, the Secretary of the Commonwealth (“Secretary”), has moved for a preliminary injunction requiring the defendant Election Commissioners of the City of Boston (“Boston Election Commissioners”) to unlock and unseal the voting machines used in Boston for the November 7, 2000 election, and then to re-read and accurately record the votes regarding the Ballot Questions. After hearing, for the reasons stated below, the Secretary’s motion for preliminary injunction is ALLOWED.
FINDINGS OF FACT
“By definition, a preliminary injunction must be granted or denied after an abbreviated presentation of the facts and the law.” Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616(1980). The preliminary findings of fact below are based on the affidavit and attached exhibit furnished by the Secretary, which was not rebutted by the Boston Election Commissioners.
As part of the administration of elections, the Secretary’s Office prints the ballot strips for the automatic voting machines used throughout the City of Boston. Every lever on the voting machine corresponds to a counter numbered sequentially on the back of the machine. With respect to the presidential candidates, there was one lever for each candidate, each lever corresponding to a different presidential candidate. However, with the Ballot Questions, the length of the descriptions of each question meant that the space for each Question covered more than the two levers necessary for the “Yes” or “No” voting choices. Therefore, those levers that did not reflect a “Yes” or “No” vote for a Question were locked, and their corresponding counters should have reflected zero votes. For instance, Question 1 covered four levers — levers 1-4 — with lever 3 being a “Yes” vote and lever 4 a “No” vote. Levers 1 and 2 were locked, so their corresponding counters on the back of the machine should each have reflected zero votes. Therefore, in order accurately to record the number of votes in favor of or against a particular Ballot Question, the election officer had to know which counter position corresponded to a “Yes” and a “No” vote. With Question 1, for example, if an election officer mistakenly believed that the locked lever 1 (rather than lever 3) was the location of the “Yes” votes, then the election officer looking at the counter position of a locked lever on the back of the machine would record zero “Yes” votes. To reduce the risk of confusion, the Secretary's staff prior to the election informed Boston Election Department employees of the relevant counter positions as to all Ballot Questions.
After the polls close, under G.L.c. 54, §35B:
[A]n election officer, in the presence of an election officer of a different political party, and subject to verification by any or all election officers present, shall, in the order of the offices as arranged on the voting machine, read and announce in distinct tones the result as shown by the counters. He shall, in the same manner, read and announce the vote on each constitutional amendment or other question as shown by the same machine ... As each vote is read and announced, it shall be recorded on the total sheets, and, when completed, the record thereof shall be compared with the numbers on the counters of the machine . . . The result shall, in like manner, be read, compared and announced, one at a time, from each machine in the polling place until all the votes on the counters have been read, compared and announced, after which the total vote shall be tabulated and entered in the official returns . . . After the vote is tabulated, the election officers shall lock and seal each machine . . .
G.L.c. 54, §35B. In at least 51 Boston precincts, there is strong reason to believe that errors were made in tabulating the vote as to some Ballot Questions because of confusion as to which counter position corresponded to the appropriate voting lever. On the day after the election, Boston Election Commissioner Nancy Lo informed the Secretary that errors appeared to have been made in at least fifty precincts, because *292 tabulation sheets reflected zero votes either for or against certain Ballot Questions; the attorney for the Boston Election Commissioners admitted at the court hearing that there were errors in at least fifty-one precincts. While this theoretically may reflect an extraordinary unanimity of opinion among Boston voters within each of those precincts, it is far more likely that it reflected an election officer’s error in reading the counter of a locked lever position, believing mistakenly that the zero number on the counter constituted the vote as to a particular Ballot Question. The magnitude of these errors raises unfortunate questions regarding the accuracy of the Ballot Question results throughout the City of Boston.
CONCLUSIONS OF LAW
The Secretary has the obligation under G.L.c. 54, §115 to furnish the results of state elections to the Governor and the Governor’s Council. Presently, the Secretary is faced with the dilemma, in the absence of judicial relief, of providing the Governor and Governor’s Council with voting results regarding the Ballot Questions that he knows to be in error. This Court finds that the Secretary has standing to seek judicial relief to ensure that he does not knowingly provide final election results to the Governor and Governor’s Council that are plainly incorrect.
Moreover, this Court has the authority to act and provide the judicial relief sought in the complaint. Under G.L.c. 56, §59, this Court has jurisdiction in civil actions “to enforce the provisions of chapters fifty to fifty-six, inclusive [governing elections in the Commonwealth], and may award relief formerly available in equity or by mandamus.” While this Court must exercise that equitable authority with considerable restraint, it certainly has the authority to prevent violations of the governing election statutes. As previously cited, under G.L.c. 54, §35B, election officers are obligated by statute to “read and announce the vote” on Ballot Questions, and to record that vote on the total sheets. While the statute does not declare that these results must be read, announced, and recorded accurately, this Court certainly understands that an accurate reading, announcement, and recording is required under the statute. Based on the undisputed facts, this Court finds that, in at least fifty-one Boston precincts, the results on certain Ballot Questions were not read, announced, and recorded accurately as required under G.L.c. 54, §35B.
In determining whether to grant a preliminary injunction, this Court must perform the three-part balancing test articulated in Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). First, the Court must evaluate the moving party’s claim of injury and its likelihood of success on the merits. Id. at 617. Second, it must determine whether failing to issue a preliminary injunction would subject the moving party to irreparable injury losses that cannot be repaired or adequately compensated upon final judgment. Id. at 617 & n. 11. Third, “[i]f the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party.” Id. at 617. In balancing these factors, “[w]hat matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id. In appropriate cases, the Court may also consider the risk of harm to the public interest. GTE Products Corp. v. Stewart, 414 Mass. 721, 723 (1993).
Given the facts of this case, the allowance of a preliminary injunction is not a close call. There is no dispute that significant mistakes have been made in the vote tabulation of the Ballot Questions in the City of Boston. Even if these mistakes were not to affect the outcome of any of these Ballot Questions, it is possible that an accurate count of these votes may reduce the statewide voting margin of victory to less than one-half of one percent, thereby permitting a statewide recount as provided for under G.L.c. 54, §135. However, for there to be such a recount, its proponents must file petitions signed by at least 1,000 registered voters no later than 5:00 p.m. on Friday, November 17, 2000ten days after the election. See G.L.c. 54, §135. Further delay in learning the accurate voting totals in Boston may result, for all practical purposes, in the denial of the losing side’s entitlement to a recount. In short, there is a substantial risk of voting error and a strong likelihood that this error, if not soon corrected, may become impossible to correct.
The cure for this potentially irreparable injury has little, if any, adverse side effects, apart from some cost and inconvenience. The Secretary proposes unlocking and unsealing the voting machines used for the November 7, 2000 election in the City of Boston, re-reading and accurately recording the votes on the Ballot Questions in the presence of representatives on each side of the Ballot Questions, and then re-locking and re-sealing the voting machines. There is no appreciable risk that this procedure will result in any new tabulation errors. To the contrary, there is a substantial likelihood that it will markedly reduce the tabulation errors that now exist. And there is a near certainty that it will put to rest (or at least greatly alleviate) concerns about the fairness of the Ballot Question election and restore faith in the legitimacy of this election.
I have considered whether it is sufficient simply to carry out this procedure in those precincts where zero votes were recorded either for or against a *293 Ballot Question. I have decided that it is not. Given the apparent magnitude of the tabulation errors in over fifty Boston precincts, there is an appreciable risk of tabulation error in the remaining precincts that cannot be ignored. While the risk of error in precincts that did not record zero votes for or against a Ballot Question is far less than in those that did, the risk is still large enough to warrant the relatively modest precautions proposed by the Secretary. Stated differently, the risks of doing nothing are greater than any risks involved in taking a second, more careful look.
ORDER
After hearing, for the reasons detailed above, this Court hereby ORDERS that:
1. Beginning at 7:00 a.m. on Wednesday, November 15, 2000, the Boston Election Commissioners or its authorized agents shall unlock and unseal all voting machines used at the November 7, 2000 election in any precinct that recorded a zero vote as to any Ballot Question, and re-read and accurately record the votes on all Ballot Questions in these precincts. After the counters in the voting machines shall be re-read and accurately recorded, the voting machines shall be re-locked and re-sealed. The unlocking and unsealing, re-reading and accurate recording, and re-locking and re-sealing of all voting machines in these Boston precincts shall be completed on November 15, 2000. The same procedure shall be conducted with respect to all voting machines in all other Boston precincts, but this Court will give the Boston Election Commissioners until close of business on November 20, 2000 to complete this procedure in these precincts.
2. The Boston Election Commissioners shall permit at least one representative of each Ballot Question committee organized and registered with the Massachusetts Office of Campaign and Political Finance, whether supporting or opposing a Ballot Question, to be present at and monitor this retabulation. In addition, each such representative shall be permitted to observe the counters on each voting machine before the voting machine is relocked and re-sealed.
3. The results of this retabulation shall be made publicly available by the Boston Election Commissioners in the same manner and to the same extent as were the results of the original tabulation.
4. After re-reading and accurately recording the results on the Ballot Questions, the Boston Election Commissioners shall transmit the revised results to the Secretary, in accordance with G.L.c. 54, §112.