van Gestel, J.
This matter comes before the Court on an application by the plaintiff, Siemens Building Technologies, Inc. (“Siemens”), seeking preliminary injunctive relief. The pertinent facts follow.

BACKGROUND

In November of 2000, the Commonwealth of Massachusetts, acting through its Division of Capital Asset Management (“DCAM”), solicited bids for the construction of a new student center at the University of Massachusetts at Boston (“UMass Boston”). Bidders were required to submit bids pursuant to the public bidding laws, including G.L.c. 149, secs. 44A — 44H.
N.B. Kenney Company, Inc. (“Kenney”) was one of the bidders for the HVAC filed sub-bid portion of the work. Prior to the submission of its filed sub-bid, Kenney obtained from Siemens a price of $1,050,000 for the automatic temperature control system (“ATC”) portion of the HVAC work. In accordance with a statutory requirement, G.L.c. 149, Sec. 44F(2), Kenney included Siemens’s price in its bid.
The sub-bids, including Kenney’s, were hied with DCAM on December 14, 2000. Thereafter, on January 4, 2001, DCAM received and opened general bids for the project. Suffolk Construction Co., Inc. (“Suffolk”), was ultimately declared the successful bidder as general contractor. Suffolk incorporated in its January 4, 2001, bid the $9,420,000 filed sub-bid of Kenney for the HVAC work, which included the Siemens $1,050,000 price for the ATC portion thereof.
In October 2000, when the project specifications were completed, the existing ATC system at the UMass Boston campus was a Siemens system. For that reason, the project HVAC specifications included a component that the project ATC system to be installed must be able to interface with the existing Siemens ATC system already installed in virtually all buildings at the UMass Boston campus.
The Kenney filed sub-bid includes the following statutorily mandated language:
The undersigned agrees that the above list of bids to the undersigned represents bona fide bids based on the hereinbefore described plans, specifications and addenda and that, if the undersigned is awarded the contract, they will be used for the work indicated at the amounts stated, if satisfactory to the awarding authority.
In the foregoing, the “undersigned” was Kenney and the “list of bids” included Siemens price of $1,050,000 for the automatic temperature control system.
There was a delay in awarding the contract to Suffolk for reasons unrelated to the Siemens claim. The project contract was executed by DCAM “as of May 9, 2001" on June 8, 2001.
DCAM, while attending to the solicitation for bids for the project, as described above, was also, on a somewhat parallel track, conducting a study of energy and water conservation for the project pursuant to G.L.c. 25A. A company named Noresco, an energy services company, performed a detailed survey of the UMass Boston facility and its energy using systems to identify all energy saving opportunities.
In September 2000, Noresco delivered a report to DCAM suggesting, among other things, an “energy management system upgrade and expansion.” Included in the recommendations was one that UMass Boston “implement a major expansion of the existing Siemens energy management system by adding more than 2,100 new hardware points.”
However, on January 25, 2001, about three weeks after the bid opening described above, Noresco, for the first time, suggested that it might not be feasible to stay with the Siemens system. This led to a determination by DCAM, after Noresco performed a comparison between the Siemens system and a system *153 provided by Johnson Controls, Inc. (“JCI”), to replace the Siemens system with that of JCI.
DCAM claims that because of its concern that the Siemens system for the new student center might not be fully functional with the new campus-wide JCI system, DCAM wrote Suffolk asking that it advise Kenney not to enter into any subcontract for the ATC system “until the matter could be more fully investigated and a determination made on what manufacturer’s system could be fully functional” with the campus-wide system.
By October 2001, DCAM adopted the findings of its consultants and, on October 15, 2001, DCAM directed Suffolk to submit a change order for the JCI system and advised Siemens of its decision.
Siemens was the only “bidder”[1] to Kenney for the ATC work. JCI never submitted any “bid” thereon. And, of course, the specifications upon which Siemens bid, and on which any other entity considered bidding and decided not to, called for an ATC system compatible with the then installed campus-wide Siemens system.
This is the situation as presented to the Court by Siemens, and not significantly challenged by any of the defendants. Despite the nearly ten months that it took DCAM to sort out what it was going to do with the ATC system at UMass Boston, the parties now cry for an almost immediate determination from the Court.

DISCUSSION

In order to prevail on its request for preliminary injunctive relief, Siemens bears the burden of showing its likelihood of success on the merits; that it will suffer irreparable harm if the injunctive relief sought is not granted; and that its harm, without the injunction, outweighs any harm to DCAM and the other defendants from their being enjoined. GTE Products Cop. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). Further, the Court must determine whether the granting of an inunction will promote or adversely affect the public interest. Biotti v. Board of Selectmen of Manchester, 25 Mass.App.Ct. 637, 640 (1988).
This assessment turns on the requirements of the public bidding statutes and the actions of DCAM in connection therewith.
G.L.c. 149, Sec. 44F includes verbatim the Form for Sub-Bid of the nature filed by Kenney. Included therein, as noted above, is the following:
The undersigned agrees that the above list of bids to the undersigned represents bona fide bids based on the hereinbefore described plans, specifications and addenda and that, if the undersigned is awarded the contract, they will be used for the work indicated at the amounts stated, if satisfactory to the awarding authority.
(Emphasis added.)
There are two issues of significance: (1) was Siemens a bidder covered by the public bidding statutes and (2) was Siemens satisfactory to DCAM?
G.L.c. 149, Sec. 44A(2) mandates that contracts for construction estimated to cost more than $25,000 “shall be awarded to the lowest responsible and eligible general bidder on the basis of competitive bids in accordance with the procedure set forth in the provisions of Sections 44A to 44H. (Emphasis added.) Suffolk, not Siemens, of course, was the general bidder.
Kenney was a sub-bidder under Sec. 44F. Siemens, if a bidder at all — and accepting the statutory language in Sec. 44F, it probably was a bidder of sorts — was a sub-bidder to a sub-bidder. As such, do the bidding requirements of c. 149 apply to it for any purpose other than the Sec. 44F provisions? Certainly there is nothing in Secs. 44D or 44E, that deal with bid submissions and the form of bids, requirements that would apply to someone in Siemens position. Nor does there seem to be anything in any of the other Sections of c. 149, except for Sec. 44F, that would apply to Siemens.
No cases have been presented to this Court holding that someone in Siemens position is a bidder of the kind that c. 149, Secs. 44A through 44H, was intended to regulate. Siemens is much more like a material supplier and as such its materials can later be changed to those of another such supplier at the direction of the owner or the architect upon an appropriate change order. The owner, DCAM here, did just that.
The public interest overlay that comes into play in a situation like this is significant. The standard of public interest measures the propriety and need for injunctive relief. Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984). This Court is not prepared to second-guess DCAM and its advisers, nor should it, and say that the public interest is not better served by having a single integrated campus-wide ATC system provided by JCI at UMass Boston than would be the case if all buildings but one, the new student center, were served by JCI and the new building was served by Siemens. It has long been the law that determinations of this sort are for DCAM to make, not the Court, in the absence of some showing of illegal or arbitrary action. See, e.g., Fred C. McClean Heating Supplies, Inc. v. Westfield Trade High School Building Committee, 345 Mass. 267, 273-74 (1963); Capuano, Inc. v. School Building Committee of Wilbraham, 330 Mass. 494, 496 (1953).
ORDER
For the foregoing reasons, this Court cannot conclude that Siemens has met its burden of showing its likelihood of success on the merits, nor has it overcome the contrary public interest effect involved in granting it the preliminary relief it seek. Consequently, the request for a preliminary injunction is DENIED.

The Court uses the word “bidder” despite DCAM’s and *154 others’ contentions that Siemens was only an offeror and not a bidder, because the Commonwealth’s own Form for Sub-Bid uses the words “bid” and “bids" four times in part E and F thereof when referring to entities in Siemens position on the Kenney filed sub-bid.