Fecteau, Francis R., J.
The plaintiffs application for a preliminary injunction came on for hearing on May 9, 2007, and it was argued by counsel; thereupon, in consideration of the pleadings, affidavits and arguments of the parties in support of and in opposition to the entry of a preliminary injunction, the court makes the following findings of fact and rulings of law.
This action commenced by the plaintiffs filing of a complaint on May 1, 2007. It relates to a pipeline for petroleum products that is operated by the plaintiff, which extends from the Port of East Providence, Rhode Island, at which point tanker ships off-load their product into storage facilities, to Springfield, Massachusetts, the location of a storage terminal that services the western Massachusetts market. As can be expected, this pipeline crosses over or under the property of others, including that of the defendant, in Oxford, crossing under its land for approximately 120 feet. It appears from the motion record that at this location, the pipeline is six inches in diameter.
The plaintiffs usage has been the subject of a lease of an easement from the defendant since approximately 1977, and between predecessors in interest from approximately 1931. The original five-year term of the lease, together with five express option extension periods of five years each, terminated on April 30, 2007. The lease has not been replaced and, while the parties have had negotiations over a purchase of an easement, they have yet not agreed to extend the plaintiffs right to continue to cross the land of the defendant in any form. The defendant now views the plaintiff as a trespasser with no right to hold over, and has made demand upon it to cap the pipeline and terminate its continued use of the defendant’s land. The plaintiff seeks a continuation of the status quo pending action on an application it filed with the Energy Facilities Siting Board[1] on April 27, 2007 (the Friday prior to the Monday lease termination), for leave to take an easement by eminent domain. Its complaint for injunctive relief does not appear to seek any form of permanent relief but is viewed merely in aid of its statutory right to petition the Siting Board. The statute is silent as to the availability of equitable relief. Whatever urgency there is to the plaintiffs position was created by its own inexplicable and undefendable inaction, as it could have filed this application at a time well before the lease expiration so that a decision *493 could have been rendered by the board prior thereto. As observed by the defendant, equity aids the vigilant.
The right of the plaintiff to obtain this relief, filed pursuant to the provisions of G.L.c. 164, §69S, is contested by the defendant. This statute states: “[a]ny company may petition the board for the right to exercise the power of eminent domain with respect to oil pipelines specified and contained in the proposed notice of intention submitted in accordance with section 691 if such company is unable to reach agreement with the owners of land for acquisition of any necessary estate or interest in land . . . The board may thereafter authorize the company to take by eminent domain under chapter seventy-nine such lands necessary for the construction of the oil pipeline as required in the public interest, convenience and necessity.”
Such a petition appears to depend upon application and interpretation of a statutory definition namely, “oil facility”: “any new unit, including associated buildings and structures, designed for, or capable of, the refining, storage of more than five hundred thousand barrels or transshipment of oil or refined oil products and any new pipeline for the transportation of oil or refined oil products which is greater than one mile in length except restructuring, rebuilding, or relaying of existing pipelines of the same capacity; provided, however, that this oil facility shall not include any facility covered by a long-range forecast or supplement thereto under section 691 . . .” G.L.c. 164, §69G.[2] Unfortunately, this definition does not appear to have been the subject of prior interpretation by an appellate court in Massachusetts, nor did the parties present any administrative regulations or decisions that involved said statute.[3] It is unclear, for example, whether the reference to “one mile” is to the overall length of the pipeline, or the length for which leave is sought for a taking under the eminent domain laws[4] While it is clear that this pipeline is many miles long and has been in existence and use for many years, and that “restructuring, rebuilding or relaying” is likely not necessary, it is unclear whether the plaintiffs application fits comfortably within the statutory definitions and prerequisites.[5] The defendant’s opposition to the plaintiffs application under this statute comes chiefly from its view that the statute is intended for new construction and that the scope of agency jurisdiction is strictly construed, according to its enabling legislation. Mobil contends that an exception appears to exist for reconstruction of an existing pipeline, which, although it does not appear to be required, it will do if necessary to come within the strict terms of the statute. As observed in footnote 2, supra, either party could have and may still file for an advisory opinion from the Siting Board as to the application of the statute in question to the circumstances of this case.
The railroad apparently has notified the plaintiff of its intention to enforce its property rights. The plaintiff therefore seeks an injunction that will prevent the defendant from interfering with the continued operation of the pipeline and from seeking to evict the plaintiff during the pendency of its application before the Siting Board; indeed, Mobil can offer no other basis for the court to act contrary to the rights of the property owner. Mobil contends that failure to do so, however, will subject it and the customers served by the Springfield terminal to disruption of supply. The defendant retorts that an alternative method of supply is available to the plaintiff, in the form of tanker trucks. The parties appear not to contest that approximately 13,000 barrels of gasoline, at 42 gallons per barrel, totaling roughly 546,000 gallons, leaves the Springfield terminal on a daily basis. If the pipeline is shut down, the transportation of this amount of gasoline would require approximately 60 round-trips per day by tanker truck.
In determining whether to grant a preliminary injunction, this court considers the balancing test set forth in Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). See also Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990). The criteria for issuance of a preliminary injunction are that the moving party must show, on the basis of an “abbreviated presentation of the facts and law," a likelihood of success on the merits of its claim and that absent a preliminary injunction, the moving party will suffer irreparable harm. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980); GTE Products Corp. v. Steward, 414 Mass. 721, 722-23 (1993). If the standard is met, the court must then balance the risk of irreparable harm to the moving party against any similar risk of irreparable harm which granting the injunction would create for the opposing party. Packaging Industries Group, Inc. v. Cheney, supra at 617. “In the context of a preliminary injunction, the only rights which may be irreparably lost are those not capable of vindication by a final judgment, rendered either at law or in equity.” Id. at 617 n.11. “[B]efore issuing the preliminary injunction, a judge is required to determine that the requested order promotes the public interest, or, alternatively, that the equitable relief will not adversely affect the public.” Commonwealth v. Massachusetts CRINC, 392 Mass. 79, 89 (1984).
Therefore, in consideration of the arguments of the parties, the foregoing standards and for the foregoing reasons, the following general findings are made.
It does not appear to the court that a failure to issue the preliminary injunction would subject the moving party to a substantial risk of irreparable harm, i.e., loss of rights not capable of remediation by a final judgment in law or equity should the moving party prevail after a full hearing on the merits, as there are alternative, albeit more costly methods that the plaintiff (and other oil companies that utilize the plaintiffs *494 pipeline, if any) can employ to continue the transportation of gasoline to the Springfield terminal. However, there is a real prospect of significant disruption to the public convenience and a likelihood of negative impact upon the environment with the substitute transportation of gasoline by truck instead of pipeline that would likely occur as the result of the termination of use of the pipeline which are viewed as irreparable harms. A public policy is seen in G.L.c. 164, §§69G-S, in favor of efficient energy supplies and minimization of harm to the environment.
With no body of authority upon which the court can assess the plaintiffs likelihood of success at the Energy Facilities Siting Board after a full hearing on the merits or even upon an abbreviated hearing to determine its jurisdiction to act, this court is tom between the strict construction of the statute and a competing public policy in favor of efficient and cost-effective supply of energy at minimum harm to the environment. However, given the fundamental purpose of the Siting Board to assist the public in obtaining efficiency in supply and to minimize damage to the environment, continued use of the pipeline is viewed as more economical and less damaging to the environment than the daily addition of 60 tanker trucks to the roads of the Commonwealth. Moreover, given the opportunity for the plaintiff (and the defendant) to seek abbreviated rulings from the Siting Board as to its jurisdiction and the applicability of the statute herein, the availability of such opinions appear to be on a more expedited basis as would a full decision on the merits of the plaintiffs application for eminent domain. Therefore, and notwithstanding the right of an owner to control its own property, this court finds that the granting of the preliminary injunction will not create a substantial risk of actual irreparable harm to the parly opposing the issuance of the injunction, at least for as long as the Siting Board requires to issue an opinion, advisory or otherwise, as to its own jurisdiction and the applicability of this statute to the circumstances herein presented.
The court concludes that the risk of irreparable harm to the public convenience that is represented by the application of the moving party,[6] viewed in the light of that party’s chances of success on the merits of the case, outweighs the probable harm to the opposing party, viewed in the light of that party’s likelihood of prevailing on the merits of the case. The granting of the preliminary injunction for the pen-dency of the plaintiffs application before the Siting Board will best serve the public interest. Accordingly, based upon the foregoing findings of fact and rulings of law, the plaintiffs motion for the entry of the preliminary injunction is ALLOWED. Until the administrative proceeding before the Energy Facilities Siting Board commenced by the plaintiff under the provisions of G.L.c. 164, §69S is concluded, the defendant is prohibited from:
(1) taking any action to interfere with or prevent the operation of the pipeline; and, (2) prosecuting any action at law to evict the plaintiff from its property, including a summary process action under the Massachusetts Summary Process Rules.
As a condition of the entry of the preliminary injunction, however, the party in whose favor the preliminary injunction is granted is ordered to:
(1) file forthwith, under the provisions of 980 CMR 2.07, either an application with the Energy Facilities Siting Board for an advisory opinion on the applicability of G.L.c. 164, §69S to the circumstances presented herein, or for an opinion as to its jurisdiction to act, under 980 CMR 2.08, or both; and,
(2) to file a bond pursuant to Rule 65(c) of the Rules of Civil Procedure in the amount of fifty thousand dollars ($50,000.00) for the payment of such costs and damages as may be incurred or suffered by the defendant who is found to have been wrongfully enjoined. Furthermore, as an additional condition of the continuation of the injunction during the pendency of the plaintiffs application before the Energy Facilities Siting Board, the plaintiff must pay to the defendant a usage fee of two thousand five hundred dollars forthwith, for the month of May 2007, and to thereafter pay said amount per month, payable on the first of every month prospectively.

According to 980 CMR 2.02(1), “[t]he Board is responsible for implementing the energy policies contained in its enabling legislation in order to provide a reliable energy supply for Massachusetts with a minimum impact on the environment at the lowest possible cost. The powers and duties of the Board are enumerated in M.G.L.c. 164, §69H.”

G.L.c. 164, §69G, contains a series of definitions that “[a]s used in section sixty-nine H to sixty-nine R, inclusive, the following words and terms shall have the following meanings: . . .” While these definitions were first enacted in 1973, and therefore pre-date the enactment of §69S, corrective legislation to included §69S appears not to have been passed.

For example, neither party brought to the court’s attention that either party can or could have filed for an advisory opinion, under 980 CMR 2.07, which states: that “any person may at any time request, via written petition, an advisory ruling with respect to the applicability of any statute or regulation enforced or administered by the Board to any person, property or factual situation. A petition shall be signed by the applicant, shall contain the applicant’s address, and shall state clearly and concisely the substance or nature of the request. The petition shall be accompanied by any supporting data, views or arguments. Upon receipt of the petition, the Board shall consider it and shall, within 60 days after the receipt of the request, notify the applicant either that the request is denied or that the Board will render an advisory ruling. In order to assist the Board in considering the request, the Director may require additional information as he deems appropriate. At any time before issuance of an advisory ruling, the Board may rescind a decision to render an advisory ruling. If the advisory mling is rendered, a copy of the ruling shall be sent to the applicant. A complete record of every advisory ruling shall be maintained by the Board. No advisory ruling shall bind or otherwise estop the Board in any pending or future matter. There shall be no obligation to render an advisory ruling.”
*495 Likewise, the plaintiff could have sought a determination of jurisdiction under the provisions of 980 CMR 2.08, which states: “[a]n applicant may at any time petition the Board for a determination of whether construction, expansion, or other modification of a proposed electric generating unit, electric transmission line, ancillary structure, natural gas pipeline, natural gas storage facility, oil pipeline, oil refinery, oil storage facility, oil transshipment facility, or other facility is subject to Board jurisdiction, is not subject to Board jurisdiction, or may qualify for a Certificate pursuant to 980 CMR 6.00 . . .”

There is support for the view that the stated length of “one mile" is in reference to the overall length of the pipeline. See 980 CMR 8.03(2)(e), which states in relevant part: “[f]or a proposed pipeline for the transportation of oil or refined oil products which is greater than one mile in length, the petitioner shall provide, for any segment of such pipeline to be located in Massachusetts (and for any alternative routes in Massachusetts or alternative transportation facilities or methods to serve Massachusetts proposed to the extent that the information is available and relevant): ...”

As is well known from the caselaw as concerns judicial review of administrative decisions, this court must defer to agency expertise, and therefore cannot substitute our view over that of the agency. Given no assistance by the parties in connection with how the administrative agency would view the inteipretation of this definition, offering no logical basis to justify the distinction between new and existing pipelines, and without intending to dictate to the agency how they should view the statute, the defendant’s reliance upon a limitation to new construction appears to be a difference without a meaningful distinction. It is noted that the statute in question was first enacted in 1976, by c. 468 of the Acts and Resolves of that year.

It is obviously not the intention of the court to comment upon the long-term effects of the continued use of petroleum products, nor whether the public interest is actually being served by the producers of those products. The scope of this decision is merely on the short-term use of the pipeline in question.