Moses, Richard T., J.
This matter is before the court on the application of Deborah Rich for a preliminary injunction seeking an order requiring Lesley Rich to return certain electronic communications and to refrain from any further dissemination of unlawfully obtained electronic communications or their contents, by any means to any third party.
The matter was set down for hearing for November 21, 2007. The court also heard a motion seeking impoundment of a deposition transcript taken in a Georgia proceeding.
An evidentiaiy hearing was held at which both the plaintiff and the defendant testified.
The plaintiff, Deborah Rich (“plaintiff’) presently resides in Lincoln, Rhode Island, while the defendant Lesley S. Rich (“defendant”) resides at the former marital home in Somerset, Massachusetts.
The parties were married in 1974 and divorced in 1987. There are two children of the marriage who are presently adults.
After the divorce, the plaintiff returned to the marital home to reside with the defendant and their children in Somerset, Massachusetts, which living arrangement continued from 1989 through June 1993. There were at least two computers situated at the Somerset home which were networked and used by the plaintiff, the defendant and their children. The server for the computer was AOL and the primary account holder was the defendant. The plaintiff maintained a password-protected AOL account. The court finds that the plaintiff did not share her password with any family members. In approximately 2001, the defendant decided to purchase and install a Keylogger software program on the family computers which monitored key strokes of the user of the computer. This permitted the defendant to retrieve the password of the plaintiff as well as any outgoing instant messages but did not permit retrieval of incoming instant messages. The court finds it is likely that shortly after installation of the subject program, the defendant started to monitor communications from the plaintiff on her password-protected email account. At some time prior to June 2003, he concluded that plaintiff was engaged in online communications with an individual, ultimately identified as Andrew Fisher. These communications were of a personal nature and were thought by the plaintiff to be protected from inspection by any third parties, including the defendant.
In June of 2003, the defendant became aware that the plaintiff intended to travel to the Cayman Islands to meet an individual, whom he believed to be Andrew Fisher. This resulted in at least two discussions between the parties in which it was disclosed to the plaintiff by the defendant that he had been monitoring her email communications. During one of these discussions, he exhibited to her, on the computer in his study, portions of the intercepted email communications. The plaintiff was in shock in that what she thought were private communications had been intercepted and reviewed by her former husband. The plaintiff implored him to delete all of the subject communications. The defendant purported to delete such materials but did not advise the plaintiff that he had made a copy of them. The disclosure of the defendant’s conduct contributed to a final separation of the parties. This resulted in the defendant communicating with Robin Fisher, the wife of Mr. Fisher and *435 ultimately providing copies of various emails retrieved from his computer purportedly between Andrew and the plaintiff. The defendant appeared at a deposition in Georgia in which certain emails were marked as exhibits. Also pursuant to a subpoena which had been served upon him, he produced his computer and hard drive for the purpose of permitting retrieval of any incriminating materials which might exist thereon. At the time of the hearing, such computer continued to remain in the possession and control of Robin Fisher’s counsel.
Counsel for Robin Fisher filed Letters Rogatoiy in the State of Rhode Island seeking permission to take the deposition of the plaintiff, Deborah Rich.
On October 30, 2007, a Motion for Sanctions was filed on behalf of counsel for Robin Fisher for failure of Deborah Rich to appear at an earlier deposition. Also, a hearing was held on a Motion to Quash a Subpoena that had been issued to the plaintiff. The Rhode Island court (Rubine, J.) denied the motion to quash in part and ordered that Deborah Rich appear for a deposition. The court reserved ruling on the document request and the use of emails which were alleged to have been improperly obtained. A hearing is scheduled before Rubine, J., with respect to such matter, for November 27, 2007. The motion for sanctions was denied. The defendant claims that the materials which were retrieved by him fall into two categories. The first category relates to the materials which were retrieved by virtue of the Keylogger program. The second category includes emails sent and received by the plaintiff which were retrieved by the defendant purportedly pursuant to a unique feature with AOL accounts which stores emails of all users of the computer in a “personal filing cabinet.” The court finds that this was a feature that neither the plaintiff nor the defendant were aware of and that the first time that the defendant became aware of the same was on or around June of2003. Thus the court finds that both parties had an expectation of privacy with respect to items which became inadvertently stored in the “personal filing cabinet” of the subject computer.
The court further finds that it is likely that the defendant, by virtue of the Keylogger program, was able to obtain the plaintiffs password in order to access her account and that he probably did so on June 19, 2003. On such date, he appears to have intercepted an email purportedly from Andrew Fisher to the plaintiff, which was of a highly personal nature. This email was printed by the defendant and probably deleted prior to the plaintiff seeing it. The plaintiff has further asserted that the defendant has attempted to engage a third party in order to “hack” into her Rhode Island computer. The court finds that there was an insufficient showing of any such conduct at hearing.
DISCUSSION
The standard for issuing a preliminaiy injunction requires the demonstration of four elements. The moving party must show: (1) a reasonable likelihood of success on the merits; (2) that he will suffer irreparable harm if an injunction is not granted; (3) that the harm he will suffer outweighs harm to the opposing party if the preliminary injunction is granted; and (4) the public interest will not be adversely affected if the preliminary injunction is denied. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980).
THE PLAINTIFF HAS MADE A SUFFICIENT SHOWING OF A LIKELIHOOD OF SUCCESS ON THE MERITS[1]
The provisions of G.L.c. 272, §99, provide in part:
The general court further finds that the uncontrolled development and unrestricted use of modem electronic surveillance devices pose grave dangers to the privacy of all citizens of the commonwealth. Therefore, the secret use of such devices by private individuals must be prohibited.
The term “wire communication” includes any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception.
The term “intercepting device” is defined by the statute as:
any device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire or oral communication other than a hearing aid or similar device which is being used to correct subnormal hearing to normal and other than any telephone or telegraph instrument, equipment, facility, or a component thereof, (a) furnished to a subscriber or user by a communications common carrier in the ordinary course of its business under its tariff and being used by the subscriber or user in the ordinary course of its business; or (b) being used by a communications common carrier in the ordinary course of its business.
The term “interception” is defined by the statute as:
... to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication; . . .
The statute defines “contents” with respect wire and oral communications as “. . . any information concerning the identity of the parties to such communication or the existence, contents, substance, purport, or meaning of that communication.”
The term “aggrieved person” is defined under the statute as “any individual who was a party to an intercepted wire or oral communication ... or who would otherwise have standing to complain that his *436 personal or property interest or privacy was invaded in the course of an interception.”
The court finds that the secret use of the Keylogger software program in order to record instant messages of the plaintiff and/or to gain access to her emails is violative of the aforesaid statute. In that the plain language of the statute was designed to prohibit the use of electronic surveillance devices by private individual due to the serious threat that they pose to the privacy of citizens, the plain language fails to exhibit any intent to protect the action of the defendant in the case at bar. Commonwealth v. Hyde, 434 Mass. 594, 600 (2001).
BALANCING THE RISK OF IRREPARABLE HARM
Balancing the likelihood of irreparable harm to the plaintiff if injunctive relief is not granted against the risk of irreparable harm to the defendant if injunctive relief is granted, the court finds that risk to the plaintiff far outweigh any risk to the defendant. The court finds that the intercepted material is of a personal and intimate nature and that the disclosure of the same could substantially harm the plaintiff s reputation in the community and could affect her emotional well-being. The court finds that monetary damages would not be adequate in the case at bar and that equitable relief is necessary.
THE PUBLIC INTEREST WILL NOT BE ADVERSELY AFFECTED BY THE GRANTING OF THE PRELIMINARY INJUNCTION
The provisions of the wiretap statutes are designed to ensure that unjustified and overly broad intrusions on rights of privacy are avoided. “[TJhese provisions are not mere technical niceties and distinctions of form.” Commonwealth v. Vitello, 367 Mass. 224, 231 (1975). The public interest will not be adversely affected by injunctive relief which furthers the purpose of the statute.
ORDER
For the foregoing reasons, it is ORDERED:
1. That the defendant, Lesley S. Rich, his agents, servants, employees and attorneys, are hereby RESTRAINED and ENJOINED pending further order of the court from disseminating any electronic communications falling within the scope of this decision, either verbally, in writing, electronically or by any other means to any third party.
2. That pending further order of the court, the defendant, Lesley S. Rich, the defendant shall turn over to his counsel for safekeeping all hard copies, computer hard drives and other storage media which contain any of the aforesaid communications.
3. The Motion for Impoundment is ALLOWED.

While this court in certain instances has authority to consolidate an evidentiary hearing on a preliminary injunction with the hearing on the merits of the action, such procedure was not followed in this case and hence findings made incidental to the application for preliminary injunction are not issue preclusive on the merits. The defendant’s rights, including the right to a jury trial, are preserved pursuant to Mass.R.Civ.P. 65(b)(2).