van Gestel, Allan, J.
This matter came before the Court on the Plaintiff s Ex Parte Motion for Temporary Restraining Order and Writs of Attachment, Paper #3. The Court declined entering an ex parte order and issued an Order of Notice to show cause why a preliminary injunction and writs of attachment should not issue. See endorsement on the complaint at p. 38. The matter has now been heard on the return of the order of notice and the Court issues the following Memorandum and Order.

BACKGROUND

In its extensive and unverified complaint[2] the Commonwealth of Massachusetts, acting by and through its Attorney General, has charged the 19 defendants with unfair or deceptive acts or practices in violation of G.L.c. 93A, secs. 2 and 4, civil conspiracy, and fraud. At the heart of the complaint is an alleged “foreclosure rescue” scheme sometimes referred to as the Trust Program.
Generally described, the foreclosure rescue scheme or Trust Program targets financially strapped homeowners facing mortgage foreclosure. Allegedly at the center of the scheme is the defendant Leo H. Desire (“Desire”). It is said in the complaint, and not substantially denied in the several filings by various defendants, that Desire operates as the initial contact for the scheme by soliciting homeowners on behalf of the defendant Primary Mortgage Resources, Inc., a mortgage brokerage company, and offers to assist homeowners to obtain refinancing to avoid foreclosure. Supposedly, when foreclosure is imminent, and Desire has been otherwise unable to obtain financing for the homeowners in issue, he advises that the Trust Program is the only option to save their homes from foreclosure.
The Trust Program is a.scheme whereby the homeowners “temporarily” transfer title to their home to a buyer selected by Desire. At the time of the transfer, the buyer selected by Desire is immediately supposed to transfer title to the home to a real estate trust created, and then recorded, by counsel for a lender. The homeowners are supposed to be the beneficiaries of the real estate trust. A lender, engaged through the assistance of mortgage brokers with which Desire is connected, facilitates the transfer of title by providing mortgage financing in an amount great enough to pay off the homeowner’s defaulted mortgage, with enough money left over to pay a number of commissions and fees and, supposedly, to put enough additional money into an escrow account to enable the homeowners to carry the monthly mortgage payments, taxes, etc., for a period of six months or a year. The homeowners remain living in “their” home, and at the end of the period are supposedly able to have rebuilt their credit ratings sufficiently to get new mortgage financing and buy back their home from the real estate trust.[3]
The complaint spells out examples of situations for particular homeowners in which excessive and unknown charges were deducted from the amounts lent, real estate trusts were never created, escrow accounts were never, or not fully, funded, the full amount due to the homeowners was not provided to them, HUD financing statements were prepared erroneously and incorrectly attested to by closing attorneys, and an array of State and Federal laws designed to protect people in the homeowners’ positions were violated.
A scheme of the nature alleged requires a number of different participants. There must be someone, like Desire is alleged to be, who makes the initial contact with the homeowners and guides — one might say lures — them into the program. There needs to be mortgage brokers to find lenders, and lenders to lend. And, of course, there needs to be buyers willing to make the purchases and then follow up with transfers to the real estate trusts. Each of the 19 defendants is *350 alleged to fall into one or more of the foregoing categories.
The various defendants, in various ways — some through counsel on the merits, some shouting pro se from the back of the courtroom, and some absently being protected while their bankruptcy lawyers challenge this Court’s jurisdiction — resist the claims, or argue that they do not apply to them. Several, also however, object only to the breadth or reach of the proposed injunction, but agree to some limited relief directed at them.

DISCUSSION

Bankruptcy Stay Issues

The Court begins with the bankruptcy issues. Three of the named defendants, James J. Alberino (“Al-berino”), Robert P. Marks (“Marks”) and Robin Hayes (“Hayes”), have pending bankruptcy cases in which automatic stays are outstanding. The Commonwealth acknowledges the automatic stays, but contends that its claims against these defendants are part of the exercise of its police and regulatory powers which are specifically excepted from the automatic stay under 11 U.S.C. sec. 362(b)(4).
The Commonwealth asks this Court to make a ruling that the automatic stay does not apply to Alberino, Marks or Hayes. A state court does, under some circumstances, have concurrent jurisdiction with a Bankruptcy Court to determine the applicability of the automatic stay. See, e.g., In re Bona, 124 B.R. 11, 14-15 (S.D.N.Y 1991).
This Court believes, however, that the Bankruptcy Court, not it, is the preferred venue in which to determine the reach of its own stay. Consequently, this Court declines to act on the issue of the stays favoring Alberino, Marks or Hayes, leaving it to the Commonwealth to proceed with those issues in the appropriate Bankruptcy Court. This Court will be guided by the Bankruptcy Court’s rulings on each these three defendants.
Consequently, this Court, at this time, will enter no injunctive relief against Alberino, Marks or Hayes, nor will it permit attachments against any of them.

Service of Process

The Court has been advised by the Commonwealth that process has yet to be properly served on Universal Plus Realty & Financial Services, Inc. (“Universal”). The building at the locus of that defendant’s last known address was vacant when service thereon was attempted. Thus, the Commonwealth is pursuing service on Universal by other means. Consequently, no action will be taken at this time against Universal.

Preliminary Injunctive Relief

In order to prevail on its request for preliminary injunctive relief, the Commonwealth bears the burden of showing: its likelihood of success on the merits; that the persons it brings its claims for will suffer irreparable harm if the injunctive relief sought is not granted; and that their harm, without the injunction, outweighs any harm to the particular defendants from being enjoined. Boston Police Patrolmen’s Ass’n, Inc. v. Police Dept. of Boston, 446 Mass. 46, 49-50 (2006); GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980).
When, as here, an action is brought by the Attorney General on behalf of citizens, this Court must “determine that the requested order promotes the public interest, or, alternatively, that the equitable relief will not adversely affect the public.” Commonwealth v. Mass. CRINC, Inc., 392 Mass. 79, 89 (1984). The Court must “consider specifically whether there is a likelihood of statutoiy violations and how such statutory violations affect the public interest.” Id.
The Commonwealth has the burden of proof demonstrating its chance of success on the merits. John T. Callahan & Sons, Inc. v. City of Malden, 430 Mass. 124, 131 (1999).
Injunctive relief either by way of a temporary restraining order or by a preliminary injunction implicates a power of equity which should be exercised delicately. It should not be exercised routinely and the Court should refuse to grant such relief unless the circumstances require it.
Nolan and Sartario, Equitable Remedies, 31 M.P.S. sec. 139 (1993).
Given that the complaint is not verified, this Court is somewhat concerned by the limited affidavit support for the Commonwealth’s request for injunctive relief. “Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction.” Brookline v. Goldstein, 388 Mass. 443, 450 n.10 (1983), quoting 11 C.A. Wright & A.R. Miller, Federal Practice and Procedure sec. 2949, at 469 (1973). However, given the Commonwealth’s extensive presentation of facts in its complaint, and the internal affidavits attesting to those facts, and the defendants’ limited opposition to those facts, there is enough to its complaint to proceed with the request for an injunction. See, e.g., Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 713 (1990). The situation is further bolstered by the fact that Desire, and others of the defendants, albeit not all, do not oppose certain of the requested preliminary relief. Thus, this Court concludes that it is within its discretion to find that the Commonwealth enjoys a sufficient chance of success on the merits with much of its complaint.
Furthermore, the defendants failed to demonstrate that they would suffer a risk of irreparable harm if an injunction limited as some of them requested were issued.

*351
Attachments

The focus of the hearing and presentation before this Court at the recent hearing was almost entirely on the request for injunctive and related relief. Attachments were not discussed. Consequently, the Court does not have sufficient information before it to make the necessary findings and act on the requests therefor. This failure to act, however, is without prejudice to motions for attachments in the future that are more specifically supported as to the particular defendant to whom they are addressed.

PRELIMINARY INJUNCTION

For the foregoing reasons, the Court issues the following preliminary injunctive relief as to the specific defendants named.
The defendants Leo H. Desire, Pierre N. Joseph, Robens Joseph, Paul A. Joseph, Jean N. Joseph, Daphne Mompoint, Joel N. Charles, Advie Charles, Marie Betey Mereus; Leo Desire, Jr., Neville Francis, Primary Mortgage Resource, Inc., Home Pride Management, Inc. and Valerie F. Hanserd, and their officers, agents, servant, employees, attorneys, successors and assigns, and all other persons and entities acting in concert or participation with them who receive actual notice of this Order, are enjoined and restrained from:
a. Destroying, concealing, altering, defacing, electronically deleting or transferring beyond the reach of this Court any records, documents or other information related to the sale, purchase or financing of residential real estate in the Commonwealth of Massachusetts to, by, with, or in which any defendant in this matter was involved in any way in transactions where any of such defendants’ conduct resulted in homeowners, who were facing or threatened with foreclosure, transferring title to their homes to third parties, in which any of the defendants have participated in any capacity, including as buyer, seller, mortgage broker, real estate broker or attorney;
b. Acting as a mortgage broker or in any way in arranging for financing, for loans secured by mortgages, with respect to any real property located within the Commonwealth of Massachusetts, wherein any of such defendants’ conduct will result in homeowners, who are facing, or threatened with, foreclosure, transferring title to their homes to third parties or participating in a scheme or Trust Program such as described on page 2 above;
c. Acting as a real estate broker or real estate salesperson in any way with respect to any property located in the Commonwealth of Massachusetts, wherein any of such defendants’ conduct will result in homeowners, who are facing, or threatened with, foreclosure, transferring title to their homes to third parties or participating in a scheme or Trust Program such as described on page 2 above;
d. Exercising any rights held or purportedly held by any of such defendants pursuant to a transaction where any of such defendants’ conduct resulted in homeowners, who were facing, or threatened with, foreclosure, transferring title to their homes to third parties or participating in a scheme or Trust Program such as described on page 2 above;
e. Transferring, selling, mortgaging or encumbering any property that is subject to or purportedly subject to a transaction where any of such defendants’ conduct resulted in homeowners, who were facing, or threatened with, foreclosure, transferring title to their homes to third parties or participating in a scheme or Trust Program such as described on page 2 above;
f. Acting as a settlement agent or attorney, or providing any legal services in connection with any transactions or real estate closings, involving real property in the Commonwealth of Massachusetts that is subject to or purportedly subject to a transaction resulting in homeowners, who are facing, or threatened with, foreclosure, transferring title to their homes to third parties or participating in a scheme or Trust Program such as described on page 2 above; and
g. Except in the ordinary course of business or for necessary and usual living expenses as defined by the Internal Revenue Code, including the payment of reasonable attorneys fees, and except as ordered by this Court, a Probate and Family Court, or a United States Bankruptcy Court, transferring, pledging, selling, mortgaging or encumbering or otherwise disposing of any property, real or personal, or any ownership interest therein, directly or indirectly, and wherever located.
All of the foregoing shall remain in place unless and until vacated or modified by an Order of this Court or any appropriate appellate court.

Although the complaint as a whole is unverified, it contains within it a number of exhibits and affidavits from alleged victims of the scheme in issue.

In using the word “supposedly” through this explanation the Court is in essence saying what the Commonwealth alleges that Desire represents to the desperate homeowners.